[Sac. No. 688.   In Bank. — November 22, 1901.]

134   557
e137  209
134   557
e139  447

E. J. CROLEY, Respondent, v. CALIFORNIA PACIFIC
RAILROAD COMPANY, Appellant.

PUBLIC BRIDGE BETWEEN COUNTIES — POWER OF SUPERVISORS — CONTRACT
WITH RAILROAD COMPANY — MONEY PAYMENT — BINDING CONTRACT.
— The boards of supervisors of adjoining counties have authority to
contract with a railroad company for the payment of different sums
of money from each to the railroad company to aid it in the construc-
tion of a new bridge across a river, constituting a boundary between
the two counties, so as to make a separate roadway for teams and
footmen, and another underneath, for the use of the railroad com-
pany, which new bridge is designed to replace an old dilapidated
bridge, which had been long used both by the railroad company and
the public, and which was less convenient and more dangerous to
the public.   The contract by the supervisors to pay the money so
agreed to be paid to the railroad company, which constructs the
bridge as agreed, is binding upon the county.

ID. — STATUTORY CONSTRUCTION — LIMITATIONS UPON POWER OF SUPER-
VISORS — COUNTY GOVERNMENT ACT INAPPLICABLE — POWER UNDER
POLITICAL CODE. — Section 25 of the County Government Act, de-
fining the power of supervisors to build bridges within the county,
and placing certain limitations upon their authority, therein set
forth, only applies to bridges built "within the county," and has
no application to a bridge constructed across a river which is the
boundary between two counties.   The latter case is governed by
section 2713 of the Political Code, which is plenary in its terms, and
does not limit the power of the supervisors either in the extent or
mode in which it is to be exercised, and does not require that the
entire cost of construction thereof shall be borne by the counties, or
that the ownership thereof shall be vested in them; and the extent
and mode of exercising the power is to be determined by the re-
spective boards in each case.

APPEAL from a judgment of the Superior Court of Sacra-
mento County and from an order denying a new trial.   John
Hunt, Judge presiding.

The facts are stated in the opinion of the court.

A. L. Hart, and Peter F. Dunne, for Appellant.

Holl & Dunn, for Respondent.

HARRISON, J.—In 1893 the appellant contemplated the
construction of a new railroad bridge across the Sacramento

River, at the city of Sacramento, and in response to an invitation from the board of supervisors of the county of Sacramento, its engineer appeared before that board and outlined the character and estimated cost of the bridge.   There was at that time a bridge across the river, about four hundred feet above the place contemplated for such construction, which had been built many years prior thereto, and which had been used as a railroad bridge by the appellant, and also by the people of Sacramento and Yolo counties, for the passage of teams and vehicles, and alongside of which there was also a foot-path for individual travelers.   This bridge had become quite dilapidated, and the new bridge was intended to replace the old one, and also to afford relief from a congested travel over the bridge between the two counties, and obviate the danger of accidents from moving trains.   For this purpose the appellant proposed to construct a separate roadway for teams and footmen, and a special roadway underneath the above for its own use, and it gave to the board an estimate of the amount which the overhead wagon and foot bridge would cost, and the benefit to the county by reason of the construction of such bridge, and desired to ascertain whether the county was willing to aid in its construction.   Thereafter, December 5, 1893, the board of supervisors, upon a consideration of this proposition, adopted a resolution, which was entered upon its records, by which it appropriated the sum of thirty thousand dollars to assist the appellant in the construction of the bridge, to be paid to it as follows: fifteen thousand dollars upon the signing of the contract by the company, and the remainder upon the completion of the bridge.   A copy of this resolution was delivered to the appellant, and in response thereto, on December 7th, it gave to the board a written notice of its acceptance of the offer, and agreed to "construct and maintain, in connection with said new railroad bridge, an overhead or separate roadway, to be maintained by the California Pacific Railroad Company, for free public highway purposes, and to be independent of either tracks or trains," and that it would prosecute the construction of the bridge with diligence, and finish its construction on or before December 31, 1895.   After the receipt of this notice the board of supervisors, on December 14th, adopted the following resolution, which was spread at length upon its records:—

"Resolved, That the communication received this day from the California Pacific Railroad Company, accepting the offer of this board of thirty thousand dollars heretofore made to the said company for the construction of a bridge over the Sacramento River, according to the plans heretofore submitted by Engineer Wilkinson of said company, and it appearing to the board that the terms of acceptance of said offer are in accordance with the intention and understanding of the board, it is ordered that said letter of acceptance be received, filed, and entered in full upon the minutes, and that the said California Pacific Railroad Company is authorized to present its demand for said sum in accordance with said offer heretofore made to said company."

The first installment of fifteen thousand dollars was thereupon paid to the appellant, and it thereafter constructed the bridge, and completed the same, December 16, 1895. Thereupon the old bridge was destroyed.

October 29, 1895, the plaintiff herein, as a taxpayer of the county of Sacramento, commenced the present action to enjoin the payment of the installment of fifteen thousand dollars agreed to be paid upon the completion of the bridge, upon the ground that the appropriation of said money by the board of supervisors to aid the appellant in constructing the bridge was illegal and void, alleging in his complaint, as grounds for the relief sought, that the board of supervisors did not advertise for bids for the construction of the bridge, or for plans and specifications thereof, and that no plans or specifications or working details for the construction of the bridge were furnished by the appellant or adopted by the board of supervisors, and that no bond was required to be executed, or was executed, by the appellant for the faithful performance of any contract for the building of the bridge; also, that no contract for the construction of the bridge was entered into between the appellant and the said board of supervisors. The cause was tried by the court, and judgment rendered in favor of the respondent, from which and from an order denying a new trial the railroad company has appealed.

That the negotiations between the appellant and the board of supervisors resulting in the offer on the part of the county to pay to the appellant the sum of thirty thousand dollars towards the construction of the bridge, and the acceptance of

that offer by it, and its subsequent compliance with its agreement for the construction of the bridge, would have constituted a binding contract between two individuals capable of contracting, is a proposition not open to discussion. It is contended, however, on the part of the respondent, that the county of Sacramento is not liable for the act of its board of supervisors in agreeing to pay this money, for the reason that the board did not comply with the statutory provisions in reference to the construction of a bridge by a county. In support of this contention it relies upon subdivision 4 of section 25 of the County Government Act of 1891 (Stats. 1891, p. 300), wherein it is provided that when the cost of the construction of any bridge exceeds the sum of five hundred dollars, the board "must advertise for bids, together with plans and specifications, strain-sheets, and working details thereof, and shall let the contract therefor upon the plans adopted by them, which shall be attached to and made a part of such contract; and the person or corporation whose plans are adopted, and to whom the contract is awarded, shall be required to execute a bond, to be approved by said board, for the faithful performance of such contract"; and contends that inasmuch as this was not done, the agreement to pay the money was illegal and void.

Section 25 of the County Government Act defines the powers of the boards of supervisors in their respective counties, and subdivision 4 of the section confers upon them the power to erect and maintain bridges "within the county." The requirement of this subdivision, above quoted, that the board shall advertise for bids, together with plans and specifications, and shall require a bond for the faithful performance of the contract, is contained in a proviso to the authority which the statute has conferred upon the board for the construction of bridges, and as that authority is limited to the construction of bridges "within the county," the terms contained in the proviso are also limited to the construction of such bridges. The Sacramento River is the boundary between the counties of Sacramento and Yolo, and as the bridge in question is not "within the county" of Sacramento, the above provision in subdivision 4 has no application. As one half of a bridge to be constructed over a river which is the boundary between two counties would be in each county, it is readily seen that its construction cannot be carried out under the provision of that

subdivision. It is also evident that neither county would have the right to construct a bridge beyond its own boundary line, and there is no provision in the subdivision for any concert of action between the boards of the two counties, or for harmonizing any difference between them, if such should exist.

Section 2713 of the Political Code provides: "Bridges crossing the line between counties must be constructed by the counties into which such bridges reach, and each of the counties into which any such bridge reaches shall pay such portion of the cost of such bridge as shall have been previously agreed upon by the board of supervisors of said counties." As the County Government Act contains no provision in reference to the construction of such bridges, this provision of the Political Code is not superseded thereby, but is still in full force. The provision is plenary in its terms, and we have been cited to no provision which limits the authority of the board of supervisors thus given, either in the extent or mode in which it is to be exercised. The statute does not, in terms, require that the entire cost of the construction of such a bridge shall be borne by the counties, or that when constructed its ownership shall be vested in them. The purpose of the statute conferring this authority upon the counties is to provide facilities for travel and intercourse between different parts of the state, and if such facilities can be secured by a contribution on the part of the counties towards the cost of the construction of a bridge, whereby ample and unimpeded intercourse may be had, the purpose of the statute is accomplished. Subdivision 35 of section 25 of the County Government Act gives to the board of supervisors of each county power "to do and perform all other acts and things required by law, not in this act enumerated, or which may be necessary to the full discharge of the duties of the legislative authority of the county government." The above provision of the Political Code imposes a duty upon the legislative authority of the county government, and is also an act "required by law, not in this act enumerated." As this section of the Political Code imposes this duty upon boards of supervisors, and confers upon them the power to perform the act, but does not prescribe the mode in which the power shall be exercised, such mode, as well as the extent of its exercise, is to be determined by the respective boards in each particular case. It was shown that an agreement similar to the one

under consideration had been made by the appellant with the county of Yolo for the payment by that county of the sum of ten thousand dollars towards the construction of the bridge.

We hold, therefore, that, under the foregoing provisions, the board of supervisors had full power and authority to make the agreement in reference to the construction of the bridge, and that its promise to pay the appellant the money therein agreed by it is binding upon the county.

The judgment and order are reversed.

Garoutte, J., Van Dyke, J., McFarland, J., Beatty, C. J., and Temple, J., concurred.