[Civ. No. 240.   Fourth Appellate District.—October 7, 1930.]

JESUS DANIEL, Respondent, v. JOSE SISNERO et al., Appellants.

George R. Nichols for Appellants.

Sarau & Thompson and Robert E. Nelson for Respondent.

BARNARD, J.—This is an appeal from a judgment declaring void and of no effect, a deed dated February 15, 1927, whereby Jose Sisnero conveyed certain real property to his father, Simon Sisnero. The plaintiff herein, on July 13, 1927, obtained a judgment against the said Jose Sisnero in a tort action for $6,151.25. That action was begun January 3, 1927, and before judgment therein was rendered the conveyance referred to took place. The judgment in that action was partially satisfied on August 12, 1927, leaving a balance due thereon of $6,082. Thereafter, this action was filed against both parties to the conveyance mentioned, seeking to have said transfer of real property set aside as fraudulent. The answer of defendants admitted the relationship of father and son; the existence of the other judgment; that the same was only partially satisfied; that the defendant Jose Sisnero had not sufficient property out of which the judgment could be satisfied; and that the conveyance sought to be set aside had been made on February 15, 1927. The answer denied, however, that Jose Sisnero had ever been the owner of the real estate in question, it being alleged that Simon Sisnero, the father, had furnished the money with which said real estate was purchased; that he had always been the owner thereof and that the son had always held the same as trustee for his father; and that in giving said deed the son was not attempting to render himself insolvent, but was only performing an act which

he was legally bound to perform. After a trial the court found that at the time the original action was begun on January 3, 1927, Jose Sisnero was the owner of the property in question; that on February 15, 1927, he conveyed the same to his father, Simon Sisnero; that this transfer was made without any consideration and that by virtue thereof the said Jose Sisnero intended to and did become insolvent; that after said transfer was made he had no property out of which said judgment could be satisfied; that the plaintiff was thereby defrauded of the sum of $6,082; and that the whole of said property does not exceed in value the sum of $6,082. From the judgment that followed this appeal is taken.

The principal question raised is whether there is sufficient support for the findings of the trial court to the effect that the appellant, Jose Sisnero, was the owner of the property in question on January 3, 1927; that it is not true that said defendant never had any interest in said real property; that it is not true that the equitable ownership in said property was always or ever that of Simon Sisnero; that it is true that the consideration for the transfer of said real property to Jose Sisnero was paid in advance by Simon Sisnero, but that it is not true that the defendant Simon Sisnero did not intend a gift or bounty in paying said consideration; and that it is true that Jose Sisnero did not take title to said real property as trustee for Simon Sisnero. It is true that the record shows that both the father and the son testified that the several pieces of property in question were purchased by the son with money furnished by the father, for the purpose of having property purchased for himself. While this direct testimony that no gift or advancement was intended was competent, it was not conclusive. (*Gilmour* v. *North Pasadena Land etc. Co.*, 178 Cal. 6 [171 Pac. 1066].) On the other hand, there is a presumption of law that where a father pays the consideration, and title to property is taken in the name of the son, a gift, advancement or bounty is intended. (*Quinn* v. *Reilly*, 198 Cal. 465 [245 Pac. 1091]; *Lezinsky* v. *Mason Malt W. D. Co.*, 185 Cal. 240 [196 Pac. 884].) This presumption was, in the instant case, sufficient to sustain the action of the trial court. In *Miller* v. *Miller*, 82 Cal. App. 657 [255 Pac. 1099], it is said:

"On the other hand, aside from the oral testimony given by defendant's witnesses, the deeds themselves, which were introduced in evidence, together with the relationship of mother and son are sufficient to warrant the conclusion of the court." (See, also, *Motor Investment Co.* v. *Breslauer,* 64 Cal. App. 230 [221 Pac. 700].)

Nor will an appellate court disturb the finding of a trial court, based upon such a presumption, where the opposing evidence, in effect, goes no further than raising a conflict in the evidence. In *Cox* v. *Schnerr,* 172 Cal. 371 [156 Pac. 509, 513], the court said:

"The presumption arising from the confidential relations of the parties to the purported conveyance might of itself, and in spite of the evidence offered by plaintiff, be sufficient to justify the court's findings of fraud. There may have been in the manner of the witnesses, or the circumstances attending the giving of their testimony, that which justified the court in disregarding it. It is within the province of · the trial court to determine what weight and credit shall be given to the testimony of any witness, and this court may not control the conclusion or finding of the superior court denying credence to the testimony unless it appears that there is nothing which at all impairs its accuracy. (*Blanc* v. *Connor,* 167 Cal. 719–722 [141 Pac. 217]; *Davis* v. *Judson,* 159 Cal. 121–128 [113 Pac. 147].)"

Not only are the findings supported by the presumption referred to, but additional support is found in the unconvincing character of some of appellants' evidence. Among other things, the son testified to the following effect: That in 1913 he got $500 from his father at Clifton, Arizona, telling him that Blythe was a good town; and that he returned to Blythe and bought the first pair of lots for $250. When asked if this $500 was a gift, he replied: "He gave me that to put into business for himself, to buy properties for him." The lots had two small shacks on them. When asked if he ever paid his father interest he replied: "No, I just sent him money to live on, is all." He then built three more houses on the lots, which he says he paid for from the rents received. Two or three years later he bought another pair of lots for $200, paying for them out of the original $500 given him by his father "and the rent money". When asked if there were any buildings on those last two lots, he replied:

"No sir, I put everything in there." Two or three years later he bought another lot for $150, paying for it out of the rents from the rest of the property. He further testified that in 1918 or 1919 his father gave him an additional $2,000 at Clifton, Arizona; that he did this because the witness told him the town of Blythe was a good business town. When asked if he paid any interest on this money he replied: "No, we did not take no accounts that way at all." When asked if it was a gift he replied: "It was a gift for himself, his own business, not for myself." When asked if he had told his father about buying any property he replied: "About the first ones I bought, yes sir, he knew about it." When asked what he did with the last $2,000 he stated that he went to Ely and then to El Paso, carrying the money on his person; that he spent $250 of the money at Ely, and sent $900 to Blythe; that when he returned to Blythe he built a poolroom building on the last lot purchased, putting about $1500 into this building. He then stated that his father came to Blythe in 1925, and when he told him there was $800 left, his father requested him to buy another lot adjoining the poolroom, which he did. Again, in 1926, he bought two more lots for $150, and improved them until there were four houses thereon. When asked where he got this money he replied: "From the business." He further testified that during all these years he occupied the property, rented the houses and paid the taxes, and that throughout these same years he sent money to his father on which to live.

The father testified that he gave the money to his son to buy property for him, but could not remember the dates, and did not know whether it was one year or ten years ago; that he had the money in a grip and gave it to his son in bills; that he had never been in Blythe previous to giving his son the money; that no one was present when the gift was made; that he never asked his son what rents he was getting; and that he did not know the town of Blythe, nor what was to be bought with the money. In this connection he stated: "I know he had a couple of lots there and when I came over there to see them, then I seen what Blythe was and the property that they had."

We have read the entire transcript and feel that the findings of the court are amply sustained, not only by the presumption of law referred to, but by the unsatisfactory char-

acter of appellants' own evidence. The reading of the evidence leaves little doubt that the property in question belonged to the son, and was transferred to avoid the impending judgment. While appellants testified to the contrary, their entire evidence is not so convincing as to justify setting aside the findings of the trial court.

The next point raised is that the evidence is not sufficient to support the court's finding that the conveyance of the real property in question was made for the purpose of defrauding the plaintiff, in order to prevent the plaintiff from collecting the judgment, and that the plaintiff herein was defrauded out of $6,082 by said transfer. The defendant Jose Sisnero admitted that the transfer complained of rendered him insolvent, and he himself testified that he received no consideration for the deed to his father. These circumstances, together with the fact, as properly found by the court, that the property in question belonged to him and not to his father, sufficiently show fraud under section 3442 of the Civil Code. (*Knox* v. *Blanckenburg,* 28 Cal. App. 298 [152 Pac. 59].)

The point is raised that the court's finding ''it is not true that Simon Sisnero did not intend a gift, advancement or bounty in paying said consideration'' is a negative pregnant, and, therefore, not sufficient to sustain the judgment. Not only is this a double negative rather than a negative pregnant, but the additional finding ''and it is true that the defendant Jose Sisnero did not take title to said real property as trustee for the defendant Simon Sisnero,'' in connection with the other findings, was a sufficient finding to sustain the conclusion of law that no resulting trust was created. We have already held that these other findings are supported by the evidence and by a presumption of law.

It is not necessary to consider an objection that the court erred in refusing to permit certain conversations to be brought out, for the reason that the error complained of was later cured and the conversations in question given in full and without hindrance.

The judgment is affirmed.

Marks, Acting P. J., and Warmer, J., *pro tem.,* concurred.