**CARR v. YOKOHAMA SPECIE BANK, LIMITED, OF SAN FRANCISCO et al.**

No. 13156.

United States Court of Appeals Ninth Circuit.

Nov. 14, 1952.

252

Louis J. Glicksberg, San Francisco, Cal., for appellant.

S. M. Saroyan, Shirley, Saroyan, Calvert & Barbagelata, San Francisco, Cal., for appellees Yokohama Specie Bank et al. ·

Harold I. Baynton, Asst. Atty. Gen., Chauncey F. Tramutolo, U. S. Atty., San Francisco, Cal., Valentine C. Hammack, Percy Barshay, Sp. Assts. to Atty. Gen., P. Richard Cosway and Mary Eschweiler, Attorneys, Dept. of Justice, Washington, D. C., for appellee J. Howard McGrath.

Before DENMAN, Chief Judge, and BONE and POPE, Circuit Judges.

BONE, Circuit Judge.

For an understanding of the material facts and issues before us on this appeal see opinion of the lower court reported in 99 F.Supp. 4.

The record shows that in April of 1942 appellant was appointed Trustee in Bankruptcy of the Estate of Nippon Yusen Kaisya, a bankrupt Japanese Corporation, (hereafter called NYK) which prior to World War II had been engaged in ship transportation throughout the world. In 1943, and following summary proceedings before a Referee in bankruptcy (which proceedings were abandoned because of doubt as to whether the fund was subject to summary orders) appellant, in his capacity as Trustee in Bankruptcy, brought an action in equity in the lower court in which he prayed, inter alia, for a decree declaring that the funds in the Yoshio Muto "special account" referred to in the lower court's opinion are the property of NYK, the bankrupt; directing that they be placed in possession of appellant as such Trustee for the benefit of creditors of NYK, and that all adverse claimants to this fund be declared to have no right, title or interest therein.

Upon trial of this action the lower court held that on the record before it NYK was in no position to assert legal or equitable title to funds which resulted from transactions that were unlicensed as to the bankrupt NYK, and that the court could give no judicial recognition to its claim. The judgment denied the relief sought by appellant and this appeal followed.

Among other facts disclosed at the trial were the following. On July 26, 1941, Executive Order No. 8389, as amended, (referred to herein as the "Freezing Order") was promulgated by the President of the United States pursuant to the authority given by Section 5(b) of the Trading with the Enemy Act, 50 U.S.C.A.Appendix, § 1 et seq. This Executive Order prohibited all financial transactions between any banking institution in the United States and Japan, or any national thereof, unless licensed by the Treasury Department through an office of the Federal Reserve Bank. It was stipulated between the parties that the opening of the bank account which is here involved, and all transactions pursuant thereto, were subject to the Freezing Order.

As a result of the Freezing Order NYK suspended the operation of its ships and services in the United States.

Prior to October 14, 1941, NYK had owned and operated the steamship vessel Tatuta Maru, and on that date the Imperial Government of Japan formally requisitioned this vessel, the order of requisition reciting generally that the taking of the vessel was with the view of transporting passengers and mail between Japan and the United States, via Honolulu. The fact of the requisitioning of the vessel was made public in the United States; employees of

NYK were appointed to the personnel of the Ministry of Communications of the Government of Japan and engaged in the operation of the vessel.

On October 17, 1941 the Japanese Government gave a written power of attorney to NYK to operate the ship as the attorney in fact for that Government. Thereafter NYK made written application to the United States Treasury Department for a license to handle the requisitioned ship in the port of San Francisco where it was due to arrive about October 30, 1941. The operation here noted was to be executed as authorized by the power of attorney executed by Muto, Consul General of Japan in San Francisco.

NYK stated in its application to the Treasury Department that "all receipts and disbursements incident to this operation are independent and bear no connection with the Nippon Yusen Kaisya funds." The statements in the NYK application were made under oath of an officer of that company.

At the conclusion of the trial the lower court made elaborate findings of fact in which, among other matters, it found generally that the Japanese Government had made written verified application to the Secretary of the Treasury of the United States to authorize the Yokohama Specie Bank, Ltd., San Francisco to receive a remittance of the sum of $39,000, from the Japanese Government for deposit to its credit in the United States in an account to be maintained in the name of Consul General Yoshio Muto, Special Account; that in said application the Japanese Government admitted under oath that no one other than the Japanese Government had any [any] interest whatsoever, direct or indirect, in the said $39,000 and upon this basis the Secretary of the Treasury issued a license authorizing the said Japanese Consul to receive said remittance of money belonging solely to the Japanese Government; that subsequently said Japanese Government made further written application to the Secretary of the Treasury to authorize the said Consul General to receive the sum of approximately $68,000 estimated as the income to result from the operation of the steamship Tatuta Maru and to deposit said sum in the said bank account, upon which demand license was issued granting said application; that between November 1, 1941 and December 2, 1941 the sum of $39,053.28 was withdrawn from the said Muto Special Account pursuant to written verified applications filed by said Consul General with the Secretary of the Treasury and licenses issued by said Secretary granting said applications; that on December 7, 1941, there remained in said account a balance of $66,882.15; that at no time during the period of the transactions here involved did NYK, or any one on its behalf, disclose to the Secretary of the Treasury that NYK had, or claimed to have, any interest, direct or indirect, in any of the funds deposited in said account; that no application for any license authorizing such transactions as transactions involving funds in which NYK had an interest was ever *made* to the Secretary of the Treasury; that no license for such transactions, as transactions involving funds in which NYK had an interest was ever *granted* by the Secretary of the Treasury; that on October 14, 1941 the Imperial Government of Japan requisitioned the said steamship Tatuta Maru by its official requisition No. EN No. 2044, and by virtue of said requisition became the owner of said vessel, and operated said steamship vessel from October 14, 1941 to and including December 7, 1941 for the purpose of returning Japanese nationals located in the United States to Japan; that any and all services performed by said NYK concerning the operation of said steamship vessel from the period of October 14, 1941 to and including December 7, 1941 was as an agent on behalf of the Imperial Government of Japan; that on November 21, 1941 said NYK was paid the sum of $4,771.58 by the Imperial Government of Japan for all services rendered by NYK as agents for the Government of Japan in the operation of said vessel by the Government of Japan for the period from October 14, 1941 to and including November 21, 1941; that at no time did the San Francisco office of The Yokohama Specie Bank, Ltd. have any knowledge of, or any reason to believe that NYK had, or claimed

254

to have, any interest whatsoever in the funds of said account; that the Japanese Government was at all times during the period of the aforesaid transactions the sole, legal and beneficial owner of the funds of said account; that the balance of said account (here involved) was never at any time held by the said Yoshio Muto in trust for, or on behalf of, NYK; that NYK never had any beneficial interest in, or ownership of the said balance of said account; that by Vesting Order No. 256 dated October 27, 1942, as amended by Amendment to Vesting Order No. 256, dated September 7, 1942, the Alien Property Custodian of the United States, acting under authority granted by the Trading with the Enemy Act, as amended, seized all interests of said Yoshio Muto or the Japanese Government or the Imperial Government of Japan in said account; that the Japanese Government requisitioned the Tatuta Maru in good faith for the purpose of returning Japanese nationals from the United States to the Empire of Japan; that it is not true as alleged in appellant's complaint that it was agreed by and between said Consul General and said The Yokohama Specie Bank, Ltd., San Francisco Office, that any and all proceeds which were to be received from the voyage of said vessel were to be held in secret trust for said NYK and that any balance remaining after all expenses were paid, were to be withdrawn by said Consul General of San Francisco Office and paid to said NYK in Japan; that it is not true as charged in plaintiff's complaint, that NYK, the said Consul General of Japan and the said Yokohama Specie Bank, Ltd., entered into a plan and conspiracy to have the said Tatuta Maru declared as requisitioned by the Japanese Government.

Upon these and other pertinent findings the court entered conclusions of law in which, among other matters, it recited that until the effective date of Vesting Order No. 256, dated October 27, 1942, as amended by Amendment to Vesting Order No. 256, dated September 2, 1942, the Japanese Government was the sole owner of the entire legal and beneficial interest in the balance of $66,882.15 on deposit in the said bank account maintained in the name of Yoshio Muto, Consul General of Japan, Special Account; that NYK at no time had any interest, legal or equitable, in said account; that no part of said sum in said bank account ever became part of the assets of the estate of the bankrupt, and that the plaintiff herein never acquired any interest, legal or equitable, in said funds; that if NYK had any interest, direct or indirect, in the funds in said account, the lack of an authorization by the Secretary of the Treasury of the United States authorizing the transfer of banking credits from a banking institution in Japan to a banking institution in the United States and the payment of monies into said account for the benefit of NYK, as required by Executive Order No. 8389 of April 10, 1940, as amended by Executive Order No. 8832 of July 26, 1941, 12 U.S.C.A. § 95a note, precludes the court from giving judicial recognition to any claim of NYK, and plaintiff in this action to a beneficial interest in said account and the balance now on deposit therein.

Appellant assigns as error (1) the failure of the lower court to make a finding on the issue "did NYK furnish or provide the consideration out of which the bank account involved arose?"; (2) the holding that certain evidence of the appellee is contradictory to the resulting trust theory of appellant; (3) the holding that, as a matter of law, the evidence sustains a finding that the Tatuta Maru was a Japanese requisitioned vessel, and (4) the holding that the said transaction, if the basis of a resulting trust, was one in violation of federal laws.

As indicated by the lower court's opinion, appellant rested his case upon the theory that there existed a resulting trust in favor of NYK with respect to the account in dispute. Since legal title to the funds involved is in the Empire of Japan appellant was faced with the necessity of trying to establish by parol and circumstantial evidence that the Empire of Japan did not really have the beneficial interest in these funds. Under the rule which seems well established, the burden rested upon appellant to establish by clear, satis-

factory, unambiguous and convincing evidence the elements of a resulting trust.[1]

The question whether the showing made is clear and convincing is one for the trial court.[2] And the federal rule relating to findings of a trial court does not require the court to make findings on all facts presented or to make detailed evidentiary findings; if the findings are sufficient to support the ultimate conclusion of the court they are sufficient. Norwich Union Indemnity Co. v. Haas, 7 Cir., 179 F.2d 827, 832. Nor is it necessary that the trial court make findings asserting the negative of each issue of fact raised. It is sufficient if the special affirmative facts found by the court, construed as a whole, negative each rejected contention. The ultimate test as to the adequacy of findings will always be whether they are sufficiently comprehensive and pertinent to the issues to provide a basis for decision and whether they are supported by the evidence. Schilling v. Schwitzer-Cummins Co., 79 U.S. App.D.C. 20, 142 F.2d 82, 84. And see Woods v. Oak Park Chateau Corp., 7 Cir., 179 F.2d 611; Shapiro v. Rubens, 7 Cir., 166 F.2d 659; cf. Life Savers Corp. v. Curtiss Candy Co., 7 Cir., 182 F.2d 4; Skelly Oil Co. v. Holloway, 8 Cir., 171 F.2d 670, 672–673.

Where there is, as here, a conflict in the evidence it becomes the duty of the trial court to appraise all facts adduced in proof and it is not clearly erroneous for that court to choose between two permissible and conflicting views as to the weight of the evidence. Bjornson v. Alaska S. S. Co., 9 Cir., 193 F.2d 433. We may not disturb such a choice by the trier of the facts. On the record made in this case we must and do conclude that the findings of fact are not clearly erroneous.

But counsel for appellant insists that the rule [3] applied by the Supreme Court in cases involving issues akin to those presented in the instant case sustains the right of appellant to a judgment or decree which recognizes that the Alien Property Custodian (the Attorney General of the United States is before us as successor to the Alien Property Custodian) "has a right to vest," and that this official also has a right to demand a license from the appellant Trustee before he turns the demanded money over to the Trustee. On this basis it is urged that the lower court should have entered judgment for appellant and made the "turnover" of funds in the said Special Account conditional upon appellant securing the said licenses; that this mode of disposing of appellant's claims is authorized by and is within the doctrine announced in the cases cited in footnote 3.

Under authority of the cases cited in footnote 3, appellant also argues that in this action he seeks merely a declaration by the court that NYK had the "beneficial interest" and he does not seek here payment of the funds on deposit in the Special Account. He also refers to Treasury General Ruling No. 12, (April 21, 1942, 7 F.R. 2991). He contends that under these authorities he is entitled to here litigate the question of beneficial ownership of the account.

We agree with the trial court that the doctrine of resulting trust may not be applied to the facts as they were found by

---

1. Allen v. Withrow, 110 U.S. 119–120, 3 S.Ct. 517, 28 L.Ed. 90; Johnson v. Umsted, 8 Cir., 64 F.2d 316, 318; Hubbard Investment Co. v. Brast, 4 Cir., 59 F.2d 709–710; Bowmaster v. Carroll, 10 Cir., 23 F.2d 825, 828; Higginbotham v. Boggs, 4 Cir., 234 F. 253, 257; Gomez v. Cecena, 15 Cal.2d 363, 366, 367, 101 P.2d 477; Hansen v. Bear Film Co., Inc., 28 Cal.2d 154, 168 P.2d 946; Helm v. Zaches, 94 Cal.App.2d 625, 628, 211 P. 2d 329; Rowland v. Clark, 91 Cal.App. 2d 880, 206 P.2d 59; Norman v. Burks, 93 Cal.App.2d 687, 209 P.2d 815; McQuin v. Rice, 88 Cal.App.2d 914, 199 P.

2d 742; Redsted v. Weiss, 73 Cal.App.2d 889, 167 P.2d 735; Kobida v. Hinkelmann, 53 Cal.App.2d 186, 127 P.2d 657.

2. Hansen v. Bear Film Company, Inc., 28 Cal.2d 154, 168 P.2d 946; Beeler v. American Trust Co., 24 Cal.2d 1, 147 P.2d 583; Stromerson v. Averill, 22 Cal. 2d 808, 141 P.2d 732.

3. Propper v. Clark, Attorney General, 337 U.S. 472, 69 S.Ct. 1333, 93 L.Ed. 1480; Lyon v. Singer, 339 U.S. 841, 70 S.Ct. 903, 94 L.Ed. 1323, and Zittman v. McGrath, Attorney General, 341 U.S. 446, 71 S.Ct. 832, 95 L.Ed. 1096.

the court. The receipts here involved which make up the funds in dispute came into existence not as a result of NYK furnishing the consideration; they owe their existence to the *fact* that the Japanese Government stepped into the whole picture as a sovereign power and gave formal assurance to the United States Government that *it* was exercising official governmental control over every transaction here involved, a fact which we think has controlling legal force and effect.

And to this must be added the important fact that no application for *any license* authorizing such transactions (as transactions involving funds in which NYK had an interest) was ever *made* to the Secretary of the Treasury of the United States, and *no* license for such transactions (as transactions involving funds in which NYK had an interest) was ever *granted* by the said Secretary. Certainly no federal court can now sanction an undisclosed proceeding in 1941 which left the Government of the United States in complete ignorance of important facts upon which solemn commitments had to be made during the 1941 period of great world tension. If the funds were really the funds of NYK the United States Government was never made aware of that fact despite the fact that the law called for that sort of a disclosure.

■ The essential fact is that the Japanese Government made a requisition and made a certain agreement with the United States and the United States had a right to rely upon such a formal commitment. Whether the facts recited in the agreement were true or false, or whether there was a dissembling, is immaterial. The moment the Japanese Government executed the necessary and required papers in such a transaction a fact had occurred and the result of that fact is what is important here. The question then is not the *right* of appellant *to litigate* but the effect of the transactions in 1941 and whether by these 1941 transactions NYK acquired any interest which our courts will recognize. A transfer of credit was involved; if the transactions here considered were effected for the benefit of NYK they violated the freezing regulations. The language of the (freezing) order pro-

hibited more than payment—it prohibited *transfers* of credit. Propper, etc. v. Clark, etc., 337 U.S. 472 at page 486, 69 S.Ct. 1333, 93 L.Ed. 1480.

The judgment was correct and is affirmed.

POPE, Circuit Judge.

I concur in the foregoing opinion. I think appellant cannot sustain his claim of a right arising out of a resulting trust for additional reasons. It is claimed that NYK furnished or provided the consideration out of which the bank account involved arose. It seems to me that at most NYK furnished only a part of the consideration. Assuming that it provided the $39,000 with which the Yoshio Muto account was opened and that it furnished the vessel, yet there would have been no trip and no fund were it not that the Japanese Government, as its part of the consideration, furnished its facilities and status as a sovereign power. There is no way in which what NYK furnished could be weighed or measured against what the Japanese Government furnished.

Under these circumstances the court would be obliged to adopt the rule that where the consideration is furnished both by the alleged trustee and the claimed beneficiary in respective amounts which are uncertain and unknown even to the parties, and where the allocation of the consideration is left to mere conjecture, a resulting trust does not arise. I assume the California law controls and the rule in such cases is stated in Plass v. Plass, 122 Cal. 3, 14, 54 P. 372. The idea behind a resulting trust is that the parties must have intended that he who furnished the consideration was not making a gift or donation or extending a loan to the person into whose hands the transfer came. Tryon v. Huntoon, 67 Cal. 325, 327, 7 P. 741. Cf. Bogert on Trusts and Trustees, § 454, note 37. But the presumption is one which may be rebutted by evidence of the circumstances showing a different intention. Tryon v. Huntoon, supra. Typical cases are those where the relationship of the parties is out of the ordinary, as for instance, where there are ties of affection, Tryon v. Huntoon, supra, or relationships of husband and wife, Hamilton v. Hubbard, 134 Cal. 603, 65 P.

321, 66 P. 860, or parent and child, Daniel v. Sisnero, 109 Cal.App. 8, 292 P. 518.

Here the relationship between NYK and its sovereign, the Japanese Government, was quite extraordinary. I think the court would not be obliged to presume that NYK was not advancing the funds and furnishing the ship under circumstances excluding an expectation of a beneficial interest in the funds here in controversy.