8 F.3d 821
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES OF AMERICA, Plaintiff-Appellee,
v.
ALL THAT LOT OR PARCEL OF LAND LOCATED AT 31 ENDLESS STREET,
Martinsville, Virginia, with all Appurtenances and
Improvements Thereon, any and all of proceeds from the sale
thereof, Defendant-Appellant,
Roosevelt BROWN; Evelyn Brown, Claimants-Appellants.
 No. 92-1609.
 United States Court of Appeals,
Fourth Circuit.
 Argued: September 27, 1993.
Decided: November 2, 1993.
 
 Appeal from the United States District Court for the Western District of Virginia, at Danville. Jackson L. Kiser, Chief District Judge. (CA-90-52-D)
 ARGUED: Gilbert Kenneth Davis, Gilbert K. Davis & Associates, Fairfax, Virginia, for Appellant.
 Kenneth K. Sorenson, Assistant United States Attorney, Roanoke, Virginia, for Appellee.
 ON BRIEF: E. Montgomery Tucker, United States Attorney, Richard A. Lloret, Assistant United States Attorney, Roanoke, Virginia, for Appellee.
 W.D.Va.
 AFFIRMED.
 Before POWELL, Associate Justice (Retired), United States Supreme Court, sitting by designation, and WILKERSON and WILLIAMS, Circuit Judges.
 
 POWELL, Justice:
 
 1
 This appeal arises from an in rem forfeiture action brought by the United States against All That Parcel of Land at 31 Endless Street, Martinsville, Virginia ("the Property"). Roosevelt and Evelyn Brown ("the Claimants") are the owners of the Property. After a bench trial, pursuant to 21 U.S.C.A. § 881(a)(7) (West Supp. 1993), the district court entered a Decree of Forfeiture, which the Browns challenge here. We affirm.
 
 I.
 
 2
 The Martinsville Police Department began an investigation into cocaine trafficking on the Property on March 20, 1990. Pursuant to the information gathered from this investigation, on October 23, 1990, the United States filed a Verified Complaint for Forfeiture in rem pursuant to 21 U.S.C.A. § 881(a)(7).[1] In response, Roosevelt and Evelyn Brown filed a Claim of Interest on November 2, 1990, and an Answer to Complaint on November 20, 1990. With the permission of the district court, the United States filed an Amended Complaint on December 11, 1991, adding allegations of drug activity on the Property subsequent to the original complaint. The Browns answered and denied the allegations of the amended complaint.
 
 
 3
 The district court held a bench trial on February 18, 1992. The United States had the initial burden of proving probable cause to believe that the Property was used to facilitate felony drug activity. See 21 U.S.C.A. § 881(d) (incorporating 19 U.S.C. § 1615 (West 1980 & Supp. 1993)). On appeal, the Browns do not claim that there was a lack of probable cause.
 
 
 4
 The burden then shifted to the Browns as claimants to rebut probable cause or to prove an affirmative defense by a preponderance of the evidence. Id. Claimants "must prove that the property was not unlawfully used or that [they] did not know about or consent to the illegal use." United States v. 7715 Betsy Bruce Lane, 906 F.2d 110, 111 (4th Cir. 1990) (citing United States v. Premises and Property at 4492 South Livonia Rd., Livonia, N.Y., 889 F.2d 1258, 1267 (2d Cir. 1986)). The Browns claimed that they were "innocent owners"-that they lacked knowledge of the illegal use or did not consent to it. See 21 U.S.C.A. § 881(a)(7). After the Browns asserted an "innocent owner" defense, the United States presented rebuttal testimony to prove that the Property was used to facilitate drug violations, that the Claimants knew of the violations, and that they failed to take reasonable steps to prevent the violations on the Property.
 
 
 5
 The Browns also contended at trial that there was no substantial connection between the Property and the drug transactions. The government bears the burden of proving by a preponderance of the evidence that the Property was "substantially connected" to the underlying criminal activity. United States v. Santoro, 866 F.2d 1538, 1542 (4th Cir. 1989) (citing United States v. All Those Certain Lots, 657 F. Supp. 1062, 1065 (E.D. Va. 1987)); see United States v. 1966 Beechcraft Aircraft Model King Air A90, etc., 777 F.2d 947 (4th Cir. 1985) (applying "substantial connection" test to forfeiture under 21 U.S.C.A. § 881(a)(4)).
 
 
 6
 Following the bench trial, the district court made oral findings of fact and conclusions of law on the record. Subsequently, the district court issued a Decree of Forfeiture, filed March 24, 1992, forfeiting the Property to the United States. The Browns raise several challenges to the forfeiture.[2]
 
 II.
 
 7
 The Browns contend that there was insufficient proof to show that the Property was substantially connected to drug transactions. We review the Browns' challenges to the sufficiency of the evidence to support the factual findings of the district court under the "clearly erroneous" standard set forth in Fed. R. Civ. P. 52(a). Anderson v. Bessemer City, 470 U.S. 564, 573-76 (1985). Whether a substantial connection exists between the Property and the drug transactions is a mixed question of law and fact. United States v. Real Property & Residence at 3097 S.W. 111th Ave., Miami, Fla., 921 F.2d 1551, 1555 (11th Cir. 1991).
 
 
 8
 The district court found that "it is beyond almost any question, based on the twenty or twenty-one episodes testified to by Mr. Barnwell, [a part-time undercover agent for the Alcoholic Beverage Control Board,] that the pattern ... was not to carry the drug on their person, but to go into the house and either to cut it or have it stashed some place." App. at 146. The district court added that "this brings the house right squarely into play in the situation." App. at 146-47. Moreover, it found that "[t]he amount of activity that emanated from the house I think without question shows that the house was used in connection with a-with several, with many illegal drug transactions." App. at 147.
 
 
 9
 Based on our review of the record, ample evidence supports the district court's factual findings. Agent Francis Barnwell testified that he made approximately twenty-one purchases of cocaine on the Property between March 20, 1990, and August 10, 1990, as part of the investigation. In most of these purchases, according to Barnwell's testimony, he would approach someone outside the house and request to buy cocaine. The person from whom he requested cocaine would go inside the house, return with cocaine, and sell it to Barnwell. This evidence supports the conclusion that the Property was" substantially connected" to the drug violations. Santoro, 866 F.2d at 1542 (holding that repeated use of property for drug activity suffices to prove a substantial connection).
 
 III.
 
 10
 The Browns further claim that there was insufficient evidence to support a finding that they both had knowledge of the drug transactions, and that the district court failed to make a finding that they each had actual knowledge. See id. at 1544-45. We disagree.
 
 
 11
 The district court found that "they [the Browns] could not close their eyes as to what was going on there, and this went on for such a long period of time, I have no reservations that they knew what was going on in their house, knew that drugs were being dealt from that house." App. at 147. Thus, the district court found that both of the Brown's had actual knowledge of the drug transactions on their property. Support exists in the record for this finding.
 
 
 12
 According to agent Barnwell, Evelyn Brown expressly gave the "okay" for a sale on May 24, 1990. On that date, Barnwell approached Larry "Truck" Belcher (Evelyn Brown's son), who was on the carport to the house. Barnwell offered to trade eight cartons of cigarettes for one-half gram of cocaine. Belcher went inside the house through the carport door. When he returned, Belcher was followed by Evelyn Brown, who stood at the screen door and looked at the proffered cigarettes. After she said "okay," Belcher traded Barnwell cocaine for the cigarettes.[3]
 
 
 13
 Barnwell also testified that another sale occurred in front of both Evelyn and Roosevelt Brown. On June 15, 1990, Barnwell arrived at the Property to purchase cocaine. The Browns were having a fish-fry in the carport. Barnwell approached Larry Belcher and asked for onehalf gram of cocaine. Belcher went inside the house, returned with cocaine, and sold it to Barnwell while Barnwell was seated next to Roosevelt Brown. Barnwell testified that Roosevelt looked down at Barnwell's hand, in which Belcher dropped the package of cocaine, and then looked forward. Barnwell also testified that Evelyn Brown was standing nearby frying fish. She "kept her eye" on Barnwell, but continued to fry fish.
 
 
 14
 Accordingly, based on our review of the record, the district court's finding that each of the Browns had actual knowledge of the illicit activity was not clearly erroneous.
 
 IV.
 
 15
 The Browns further contend that there was insufficient evidence for the district court to find that they consented to the drug transactions, see United States v. 141st St. Corp., 911 F.2d 870, 877-78 (2d Cir. 1990) (citations omitted), cert. denied, 498 U.S. 1109 (1991); Betsy Bruce Lane, 906 F.2d at 111, and that the district court applied the wrong legal standard in assessing consent. It is unclear from the record what standard the district court applied. Regardless of the standard applied, the Browns did not meet their burden of proof.
 
 
 16
 Consent, for the purposes of § 881(a)(7), is"the failure to take all reasonable steps to prevent illicit use of premises once one acquires knowledge of that use ...." 141st St. Corp., 911 F.2d at 879; see 1966 Beechcraft Aircraft, 777 F.2d at 951 (applying similar definition of consent for purposes of forfeiture under § 881(a)(4)). There is no evidence that the Browns took any steps to prevent the illicit use of their property during the months of the 1990 investigation, the time period in which the district court found that they had knowledge of the drug transactions. The only evidence that the Browns attempted to prevent the illicit use of the Property was that they changed the locks on the house. They did not take this step, however, until several months prior to the forfeiture trial in February of 1992-at least a year after the initial complaint in this action was filed in November of 1990. This evidence is insufficient to prove lack of consent.
 
 V.
 
 17
 The Browns also claim that the district court did not make a finding that they had consented to the use of the Property to facilitate the drug transactions. Under Fed. R. Civ. P. 52(a), the trial court need not " 'make findings on all facts presented or to make detailed evidentiary findings; if the findings are sufficient to support the ultimate conclusion of the court they are sufficient.' " Darter v. Greenville Community Hotel Corp., 301 F.2d 70, 75 (4th Cir. 1962) (quoting Carr v. Yokohama Specie Bank, Ltd., 200 F.2d 251, 255 (9th Cir. 1952)).
 
 
 18
 In its oral findings, the district court stated that"the house is forfeited to the government, and that the claimants have no claim to it because of their-they are not innocent claimants; they knew what was going on and of course had the power to stop it." App. at 147-48. The district court's written order, the Decree of Forfeiture, stated that the Property "was used, with the full knowledge and consent of Claimants Roosevelt and Evelyn Brown, to facilitate the commission of violations of Title 21 U.S.C. §§ 801 et seq." App. at 6. The Browns claim that the written order is insufficient, in part because the district court adopted this language from a proposed decree submitted by the attorney for the United States.
 
 
 19
 By stating in his oral findings that the Browns knew that the drug transactions were occurring and had the power to stop them, the district court implicitly found that they did not take reasonable measures to stop them. Moreover, the district court made an explicit finding of consent in its Decree of Forfeiture. Although the language may have originated in the government's proposed version, the district court adopted the language as its own, and its written findings were based on, and supported by, its oral findings. Accordingly, we find no error.
 
 VI.
 
 20
 Finally, the Browns assert that the district court failed to make findings that a violation of Title 21 had occurred, and that such violation carries a penalty of greater than one year. These arguments are unavailing.
 
 
 21
 As to the first contention, the district court stated in it oral findings that "the house was used in connection with a-with several, with many illegal drug transactions." App. at 147. Although its oral findings did not specifically mention Title 21, its written Decree of Forfeiture specifically found facilitation of "the commission of violations of Title 21 U.S.C. §§ 801 et seq." App. at 6. Rule 52(a) requires no more.
 
 
 22
 The district court did not note specifically that the violations carried penalties of greater than one year. Although a specific finding would have been preferable, the failure to make one does not amount to reversible error in this case. Cf. Darter, 301 F.2d at 75 (stating that "whether findings of fact are sufficient depends ... of course, upon the particular facts of each individual case"). The Browns do not contend that the drug violations about which Agent Barnwell testified, and that the district court found to have occurred, are punishable by less than one year. Therefore, because the Browns do not allege that correction of the omission by the district court would change the result in this case, we see no need to remand.
 
 VII.
 
 23
 Accordingly, for the foregoing reasons, the decision of the district court is
 
 
 24
 AFFIRMED.
 
 
 
 [1]
 Subsection 881(a)(7) provides in part that the following shall be subject to forfeiture:
 All real property ... which is used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, a violation of this subchapter punishable by more than one year's imprisonment, except that no property shall be forfeited under this paragraph, to the extent of an interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge or consent of that owner.
 21 U.S.C.A. § 881(a)(7).
 
 
 [2]
 In addition to the grounds of error discussed in the text, at oral argument the Browns raised a proportionality claim pursuant to the Excessive Fines Clause of the Eight Amendment. See Austin v. United States, 113 S. Ct. 2801 (1993) (holding that the Clause applies to forfeitures under 21 U.S.C.A. §§ 881(a)(4) and (a)(7)). We do not reach the merits of this argument because the Browns did not raise it before the district court. See, e.g., United States v. Davis, 954 F.2d 182, 187 (4th Cir. 1992)
 
 
 [3]
 Based on the investigation, Evelyn Brown was indicted for aiding and abetting the sale of cocaine. Although she was acquitted of this charge, the government may still prevail in a civil forfeiture action. Conviction, or even indictment, of the underlying criminal offense is not required for civil forfeiture. See Betsy Bruce Lane, 906 F.2d at 111-12 (citations omitted)