James L. BOWLING, Appellant,

v.

Maggie K. LEWIS and Lillian Kulchycke,
Appellees.

No. 7738.

United States Court of Appeals
Fourth Circuit.

Argued Oct. 22, 1958.

Decided Nov. 25, 1958.

Irvine F. Belser, Jr., Columbia, S. C.
(Belser & Belser, and Clinch Heyward
Belser, Columbia, S. C., on brief), for
appellant.

H. E. McCaskill, Conway, S. C., and
George W. Keels, Florence, S. C., for
appellees.

Before SOBELOFF, Chief Judge, and
BARKSDALE and BRYAN, District
Judges.

BARKSDALE, District Judge.

■ This diversity action was insti-
tuted by appellant, James L. Bowling,

against the appellees, Maggie K. Lewis and Lillian Kulchycke, for the recovery of damages for personal injuries which he alleges he sustained as the result of the negligence of appellees. There was a trial with a jury and at the conclusion of plaintiff's evidence the district judge granted defendants' motion for a judgment of involuntary dismissal, and plaintiff has appealed. Taking the evidence, and reasonable inferences to be drawn from it, in the light most favorable to the plaintiff, as we must, Doggett v. Atlantic Holding Corp., 4 Cir., 239 F.2d 156, Scott v. Meek, 230 S.C. 310, 95 S.E. 2d 619, the facts are substantially as follows:

Having previously made a reservation, James L. Bowling, a Greyhound bus driver of Washington, D. C., arrived at defendants' motel on the ocean front at Myrtle Beach, S. C., the afternoon of Sunday, May 15, 1955, intending to spend a week of his vacation there. He was accompanied by his wife and two small children. The room to which he and his family were assigned was located at the righthand corner facing the ocean on the ground floor of one of the two buildings comprising defendants' motel. The car-parking area was to the rear of this building, and the only means of access from the parking area to the ocean-front rooms was a concrete walkway leading around both sides of the building. This walkway was from two to three feet wide, and some two or three feet from the sides of the building. Immediately adjacent to the walkway, on the side toward the building, there was a wall composed of rough, jagged, coral stones piled loosely on top of each other without mortar, which was ten to twelve inches high, approximately ten to twelve inches wide at the bottom, and somewhat pyramidal in shape. It was uneven and irregular, due to the varying sizes of the stones. Between the wall and the side of the building, there was a flower bed. The stone wall was removed by the defendants before the trial. Tuesday evening, after his arrival on Sunday, Bowling and his family left the motel about 7:15 P.M., and drove to the amusement area some distance away. As the Bowlings left the motel, dusk was coming on, electric lights were on in the motel office and one or more of the other motel rooms. Also, the motel advertising sign was lighted up and a lantern-type electric lamp was lighted which provided sufficient illumination to enable anyone to use the walkway around the building without difficulty. After spending some time at the amusement area, the Bowlings returned to the motel about 9:15 P.M., and parked their car in the place assigned to him in the parking area to the rear of the motel. Although the night was cloudy, foggy and very dark, there were no lights whatever in or about the entire motel with the exception of a small yellow bug-repellant light at the front of the building which provided no effective illumination to the rear or sides of the building. All the other lights had been turned off while the Bowlings were at the amusement area. In order to provide light enough for his wife and children to reach their room, Bowling did not extinguish the headlights of his car. These lights did not shine directly on the walkway, but did provide sufficient light for Mrs. Bowling, carrying the smaller child in her arms and leading the older one by the hand, to reach their room safely, proceeding along the concrete walk on the righthand side of the building facing the ocean. After waiting long enough for his wife and children to reach their room, Bowling turned off his headlights, and waited momentarily to give his eyes an opportunity to adjust to the darkness. With eighteen years of experience as a bus driver, he had very good night vision. Although it was then very dark, Bowling thought he could safely find his way along the walkway to his room, as he had used this walkway a number of times since his arrival at the motel on Sunday. He proceeded very cautiously around the right rear corner of the building and along the concrete walkway toward the faint glow of light at the end of the building from the yellow light in front of his room. Just aft-

er he had turned the corner and was proceeding along the walkway, his foot struck a stone on or immediately adjacent to the walkway. He turned his ankle and fell to his left into and across the wall of jagged rocks adjacent to the walkway, the fall resulting in the injuries which are the basis of this action. The Bowlings had no flashlight, but a friend, expecting to go fishing with Bowling, arrived before daylight the next morning and he had a flashlight. Using it, he and Bowling found a stone, from nine to ten inches in diameter, lying in the walkway immediately adjacent to the stone wall where Bowling had stumbled and fallen. Approximately the length of his body farther forward, they found two or three additional stones lying in the walkway. When Bowling reported the accident later in the morning to Mr. Lewis, husband of the appellee Lewis and manager of the motel, Mr. Lewis replaced the stones which had fallen out of the wall and stated that "he did not understand why this year he had had so much trouble with the rocks falling off and that evidently the rocks had fallen off into the sidewalk and it had never happened before, * * * but this year, several times, they had." That evening, appellee, Mrs. Lewis, said that she had not kept the lights burning because the regular summer season had not yet started and it was too expensive to keep the lights on with only one tenant in the building.

In explaining to the jury his reasons for sustaining defendants' motion for an involuntary dismissal, the trial judge stated his conclusion that plaintiff's evidence was insufficient to sustain the charge of negligence, and moreover, the evidence did establish that plaintiff was guilty of contributory negligence as a matter of law. Hence, there are two questions presented to us on this appeal:

(1) Was plaintiff's evidence sufficient to go to the jury on the question of negligence; and

(2) Did the evidence show that plaintiff was guilty of contributory negligence as a matter of law?

We are of the opinion that the first question must be answered in the affirmative, and the second question in the negative.

Considering first the question of defendants' negligence, the general rule seems to be that innkeepers, owe to their guests the duty of exercising ordinary and reasonable care for their safety.

"The law imposes a duty on an innkeeper or similar proprietor to furnish safe premises to his patrons and to provide articles of furniture which may be used by them in the ordinary and reasonable way without danger. Generally, however, his duties and liabilities in this respect are not those of an insurer, and extend only to the exercise of reasonable care; which must be determined from the circumstances. The proprietor's liability in such cases rests upon the same principles applicable in other cases where persons come upon the premises at the invitation of the owner or occupant and are injured in consequence of the dangerous condition of the premises. * * *

"It is the duty of proprietors of hotels and other houses of public accommodation to provide reasonably safe ways of ingress and egress for their patrons and to exercise ordinary care to keep the hallways and passageways reasonably well lighted and free of obstructions so that guests may pass to and from their rooms and other places about the premises in safety; and a slight departure from these ways will not prevent a recovery of damages, provided, of course, the guest is not guilty of contributory negligence." 28 Am.Jur. 578, 579.

To the same general effect, see 43 C.J.S. Innkeepers § 22, pp. 1173, 1174, 1177, et seq.

No South Carolina cases declaring the degree of duty owed by an innkeeper to his guests have been cited to us by counsel, nor do we find any.

Although there are decisions to the effect that innkeepers owe to their guests a "very high degree of care" or "extraordinary diligence", similar to the duty owed by a common carrier to its passengers, Mayo Hotel Co. v. Danciger, 143 Okl. 196, 288 P. 309, 311, Trulock v. Willey, 8 Cir., 187 F. 956, Bullard v. Rolader, 152 Ga. 369, 110 S.E. 16, it would seem that the more generally accepted rule is that the innkeeper's duty to his guests is that of ordinary or reasonable care.

"Clearly an innkeeper is not the insurer of the safety of his guests. However, he must exercise reasonable care for their safety, and this duty extends to the public passageways and exits." Early v. Lowe, 119 W.Va. 690, 195 S.E. 852, 853.

"The controlling substantive law is that of Iowa. The duty of an innkeeper under the law of that state— like the duty of any proprietor of a building to which the public is invited—is to use reasonable care to keep his premises safe for the use of his guests and patrons, which, of course, includes keeping the halls and passageways free from hazard." Fort Dodge Hotel Co. of Fort Dodge v. Bartelt, 8 Cir., 119 F.2d 253, 256. See also Coston v. Skyland Hotel, 231 N.C. 546, 57 S.E.2d 793.

It does seem to be the rule in South Carolina that,

"One who operates a mercantile establishment is not an insurer of the safety of those who enter his store but he does owe them the duty of exercising ordinary care to keep the aisles, passageways, and such other parts of the premises as are ordinarily used by customers in transacting business, in a reasonably safe condition." Bagwell v. McLellan Stores, 216 S.C. 207, 57 S.E.2d 257, 260 and cases therein cited.

■ It might be strongly contended that an innkeeper owes a higher degree of duty to his guest who has taken a room and incurred an obligation to pay for it, than does a merchant to a prospective customer in his store who may or may not buy anything. Certainly, he owes no less. Consequently, it would seem that the substantive law of South Carolina is that, at the least, an innkeeper owes to his guests the duty of exercising ordinary or reasonable care to maintain those parts of his premises which a guest may be expected to use, in a reasonably safe condition.

■ Applying this standard to the facts of this case, it seems clear to us that on the issue of defendants' negligence the evidence was amply sufficient to go to the jury. Bowling was using the walkway provided for his ingress and egress to and from the room assigned to him and his family. It was the duty of the defendants not only to exercise reasonable care to keep this walkway free from stones which might cause one using it to fall, but it was also their duty to provide sufficient light to enable guests to use the walkway in safety. Defendants' failure to sufficiently illuminate the walkway was not excused by the fact that the summer season at Myrtle Beach had not commenced, nor by the fact that the Bowlings were the only guests at that time.

■ It is true that there is no evidence that defendants knew of the presence of the stone on which Bowling twisted his ankle on the walkway. Therefore, appellants rely on the South Carolina rule that a merchant is "not liable for injuries caused by some defect in the premises, in the absence of any evidence tending to show that he or his agents knew or should have known, by the exercise of reasonable diligence, of the defect.", as enunciated in Anderson v. Belk-Robinson Co., 192 S.C. 132, 5 S.E.2d 732, 733, and cases therein cited. See also Green v. Bowen, 4 Cir., 223 F.2d 523. However, that contention is not sound under the circumstances of this case. Mr. Lewis, husband of one defendant and manager of the motel, admitted that rocks falling off the stone wall and into the sidewalk had been giving trouble

that year, and the continued maintenance of the wall of loosely piled, rough, and jagged stones, immediately adjacent to the walk, with knowledge of their propensity for falling onto the sidewalk, was enough to take the case to the jury under the above quoted rule. However, defendants' negligence was predicated, not solely on the presence of the stone on the walkway, but also on the breach of their duty to provide sufficient illumination to enable a guest to use the walkway in safety. We are satisfied that plaintiff's evidence was amply sufficient to go to the jury on the question of defendants' negligence.

Coming to the question of contributory negligence, of course, in numerous instances a plaintiff's contributory negligence as a matter of law appears from his own evidence, but it is well settled that ordinarily the question of contributory negligence is one for the jury. Hamlet v. Troxler, 4 Cir., 235 F.2d 335.

As was said by the South Carolina court in Gillespie v. Ford, 225 S.C. 104, 81 S.E.2d 44, 47, speaking of contributory negligence:

"It rarely becomes a question of law for the court."

See also Smiley v. Southern Railway Co., 184 S.C. 130, 191 S.E. 895, Joiner v. Fort, 226 S.C. 249, 84 S.E.2d 719.

There are cases, such as Clark v. Cleveland Drug Co., 204 N.C. 628, 169 S.E. 217, which hold that an invitee who opens a strange door and steps into total darkness, is guilty of contributory negligence as a matter of law. But that is not this case. As was said in 43 C.J.S. Innkeepers § 22, pp. 1184, 1185:

"Under some circumstances a guest or lodger is deemed guilty of contributory negligence in using a dark or unlighted stairway or in using a dark or unlighted passageway, as in instances where lighted stairways, or the means of providing light, are available to him. On the other hand, it is held that a guest cannot be charged with contributory negligence or assumption of risk merely because he uses a darkened stairway where the elevator is out of commission and the stairway is the only means available for passing between the room and the ground floor, or where, on instructions from an employee, he uses an insufficiently lighted hallway, but exercises care; and contributory negligence and assumption of risk have been found absent in other circumstances. * * * "

We are satisfied that the evidence in this case does not establish Bowling's contributory negligence as a matter of law. It is true that he testified that, when the accident happened, it was very dark, the only light anywhere being the dim glow from the yellow bulb in front of his room. However, he was using the only available means of ingress to his room. There was no one present upon whom he might call for light. He was familiar with the concrete walkway and knew its location. He and his family had used it as a means of ingress and egress several times since their arrival, in fact, he and his family had proceeded from their room to their car along this walkway safely about two hours earlier that same evening. Mrs. Bowling and the children had safely proceeded along this walkway immediately before the accident. Bowling had every reason to believe that he could safely use this walkway, with which he was familiar. The question of his contributory negligence should have been submitted to the jury. It follows that this case must be reversed and remanded for a new trial.

Reversed and remanded.