Bertha Preston DARTER and O. L. Darter, Plaintiffs,

v.

GREENVILLE COMMUNITY HOTEL CORPORATION, Defendant.

Civ. A. No. 2740.

United States District Court
W. D. South Carolina,
Greenville Division.

May 19, 1961.

Wyche, Burgess & Wyche, Greenville, S. C., and Donald T. Stant, Bristol, Va., for plaintiffs.

Love, Thornton & Arnold, Greenville, S. C., for defendant.

STERLING HUTCHESON, District Judge.

This action is brought by a husband and wife against the defendant corporation, which was the owner and operator of the Poinsett Hotel in Greenville, South Carolina. Under the provisions of the Diversity Statute, 28 U.S.C.A. § 1332, jurisdiction of the court is clear. From the evidence the following pertinent facts are established.

At the time of the occurrences here set forth the plaintiffs, O. L. Darter and his wife, Mrs. Bertha Preston Darter, were residents of the State of Tennessee. Mr. Darter was engaged in business activities which caused extensive travel on his part. Mrs. Darter usually accompanied him.

On November 12, 1958, the plaintiffs registered as guests of the hotel. They were in Greenville in the course of Mr. Darter's business activities to attend a meeting of a dairy association. Mrs. Darter was then sixty-five years of age and suffered from an arthritic condition in her lower extremities.

The plaintiffs were assigned room No. 328 which was equipped with a combination shower and tub bath, as well as with the usual lavatory. On the evening of their arrival Mr. Darter set the fixtures of the shower bath at a suitable temperature for Mrs. Darter to enter. On the following evening he repeated this procedure. During the interval both plaintiffs used the lavatory.

In the early morning hours of November 14 at about 2:30 or 3:00 A.M., while Mr. Darter was asleep, Mrs. Darter suffered pain from her arthritic condition and decided to take a hot tub bath for relief. After preparing for the bath she entered the tub, which she had previously noticed had the drain at the end opposite from the faucets, sat down and turned on the hot water without having previously tested the temperature. The evidence does not show how far she turned the spigot, but the water was hot immediately and came from the pipe accompanied by vapor. Without making

an effort to cut off the water Mrs. Darter drew back in the tub and in attempting to get out slipped, fell on her back and screamed to arouse her husband. Mr. Darter awakened and started towards the bathroom but fell over a luggage rack and was thus delayed in reaching the bathroom, where he turned off the water and helped his wife from the tub. She was severely burned over about 20% of her body, a portion of which consisted of second and third degree burns. As a result she was seriously injured and spent a long time in a hospital and under the care of doctors. She brought this action for personal injuries and Mr. Darter united as plaintiff to recover for medical and hospital bills and loss of consortium.

After the occurrences here related an employee of the hotel engaged in looking after petty maintenance examined the bath tub and found nothing out of the usual order. At or about the same time the temperature gauge on the hot water tank was checked and indicated that the temperature of the water was 154 degrees. It seems that no further investigation of the equipment was made until January 30, 1959, approximately two and one-half months later.

The hotel is equipped with two hot water tanks containing 1,000 gallons and 1,500 gallons, respectively, which are used alternately. No record is kept of which tank is in use at a specific time and there is no evidence as to which was in use at the time of these occurrences, although in view of the statement of the witness, J. T. Martin, an employee of the hotel who acts in a supervisory position over the petty maintenance men, to the effect that he inspected the temperature gauge referred to, it would appear probable that the tank registering 154 degrees was the one in use at the time. This is mere surmise but it is a probability. The water in these tanks is heated by steam conveyed into the tanks in coils from the boiler. Lines from the boiler to each tank go through valves to reduce the steam pressure from 5 to 15 pounds and then through regulator valves. Those valves are activated by thermostats located within the tank in such manner that when the temperature of the water is below the desired degree the valve opens to permit steam to pass through. When the water reaches the desired temperature the valve automatically closes to prevent the passage of more steam. The temperature for the valves is set at 150 degrees.

The hotel employs two firemen to tend the boiler. One goes on duty at 3 P.M. and is relieved by another at 11 P.M. At the time an electrically operated coal stoker was in use and it was the duty of the fireman, Roseman, who had been employed by the hotel for 19 years, to cut off the stoker when he was relieved at 11 P.M. so that no more coal could enter the furnace. The steam pressure is then about 50 pounds. The other fireman, Curtis Keel, an employee for 11 years, entered upon duty at 11 P.M. It was his duty to see that the stoker had been cut off preparatory to cleaning the boiler. His testimony was that the steam pressure was then normally somewhere between 40 and 60. Between 3:30 A.M. and 4 A.M., after the boiler and stoker became cool, Keel cleaned the equipment and turned on the stoker in order to have heat and water at the proper temperature by about 5 o'clock A.M. He testified that between 2 o'clock A.M. until after the stoker was cut on there was practically no steam pressure.

J. Mason Alexander, who had forty years experience in the operation of hotels, was the manager of the Poinsett, which position he occupied for thirty years before his retirement in 1960. He testified that the desired temperature is 150 degrees, which it appears is that set by the manufacturers of heating equipment and is found in the majority of homes and in other establishments. Although the temperature fluctuates at times he had never received a complaint of water being too hot during his entire experience. However, he testified that on occasion he has found the water too hot, or hotter than desirable, in the mornings. He has never known of a

guest being scalded by hot water. Three other guests, who were also attending the dairy convention and were at the hotel at the time, noticed nothing wrong with the water. Two permanent guests, who have resided at the hotel for sixteen years, testified that they had never found the water too hot.

On January 30, 1959, James T. Miller, who is engaged in the installation of plumbing and heating systems and who assisted in installing the plumbing in the hotel in the 1920's, was called by the management to check the hot water control. When inspecting the smaller tank he observed that the temperature gauge was set at 150 degrees but found that the valve was not operating properly to control the steam. It was necessary to remove the valve, which was not properly seated, and to replace the temperature gauge, which he found to be rusted. There is no evidence concerning any other defect in the equipment and no reference to that in the larger tank. Mr. Miller testified that the average temperature of hot water in homes is 150, boiling temperature is 212 and to produce steaming water the temperature must be between 180 and 190 degrees.

There was testimony from Dr. McNamara to the effect that a test made by him indicated that he could not hold his hand under water coming from a spigot at 138 degrees without receiving burns.

It is from this state of facts that the plaintiffs seek to recover, and the court is confronted with three issues for determination.

■■ Of course, the first question to be resolved is whether actionable negligence on the part of the defendant has been shown. The South Carolina courts do not recognize the doctrine of *res ipsa loquitur*, but from the authorities cited it appears that the rule is that negligence may be proved by circumstantial evidence as well as by direct evidence, and the innkeeper is under the duty to exercise ordinary care to furnish guests safe premises, which in this case includes furnishing hot water at a reasonable temperature. The innkeeper is not an insurer and he is chargeable only with actual knowledge or with knowledge which by the exercise of reasonable care he should have known. That is the test to be applied here.

The plaintiffs lay great stress upon the case of Lokitis v. Hartzog, E.D.S.C., tried before Judge Wyche at Orangeburg, and upon Young v. Knickerbocker Hotel Co., 334 Ill.App. 80, 78 N.E.2d 326, which latter case was referred to by Judge Wyche in the Lokitis case. They also quote from Watson v. Compagnie Generale Transatlantique, 147 Misc. 697, 264 N.Y.S. 570.

■■ From the abstract of record of the Illinois case furnished me it is not clear what proof of negligence was shown. It is suggested that the doctrine of *res ipsa loquitur* applied, but that is not apparent in the transcript. In the quotation from the New York case the duty of the defendant was laid down as being to furnish water not so hot that it would severely burn the user, and since the system was in the exclusive management and control of the defendant it should have had knowledge of the excessive temperature of the water. It is common knowledge that water in all effective heating systems reaches a temperature which will scald the user unless mixed with cold water. It follows that unless the hotel operator is held to be an insurer the mere fact that a guest receives burns creates no liability unless it is further shown that there was some unusual condition caused by the negligence of the management. Therefore, I am unable to accept those cases as controlling in South Carolina, where the innkeeper is not an insurer. In the Lokitis case Judge Wyche recognized the law as I have stated it. In charging the jury he stated the rule to be that to recover the plaintiff must prove by the greater weight or preponderance of the evidence that the injuries were causd by one or more acts of negligence alleged in the complaint. He also charged the jury that the innkeeper is not an insurer, but he owes to his guests the duty of exercising ordinary and reasonable care to maintain the

premises in a reasonably safe manner. In that case the valve regulating the steam had been removed from the system by the defendant, which fact was, of course, known to the defendant. The instant case is more similar to Sexton v. Noll Const. Co., 108 S.C. 516, 95 S.E. 129, 131, in which a child was burned by the defective condition of a faucet attached to a tank containing hot asphalt. The court said:

"The testimony shows that the defective condition of the pipe was the proximate cause of the injury; but it was not an obvious danger nor one reasonably to be anticipated by the defendant."

In reciting the facts reference has been made to testimony of certain employees of the defendant corporation. I am not unmindful of the well-established principle that the declaration of an agent concerning the narration of past events is not binding upon the principal unless a part of the *res gestae*. Applying that rule the only facts to be relied upon in behalf of the plaintiffs are that Mrs. Darter received burns as the result of turning the hot water spigot from a water system which had never before produced such results to the knowledge of the management and of two permanent guests who had resided in the hotel for sixteen years each and to three other guests of the hotel on the night in question, added to the condition of one of the hot water tanks two and one-half months later. Incidentally, this condition was not corrected until some time in March, 1959, with no proof of any untoward occurrence in the meantime.

Accepting the most liberal interpretation of the South Carolina law concerning the doctrine of *res ipsa loquitur* which has been cited to me, the question presented is whether these facts and circumstances are sufficient to show primary negligence on the part of the hotel management. My conclusion is that these circumstances are not sufficient to prove such negligence.

Furthermore, relaxing the rule of evidence to such an extent as to consider the testimony of the employees, my conclusion remains unchanged. The plumber, Mr. Miller, who replaced the regulating valve, was unable to state how long the condition which he found on January 30th had existed. He testified that he was told they had been having some trouble with the hot water, and his testimony indicated that the condition might have been brought about by various causes and at an uncertain time. The record is silent as to what prompted this examination of the equipment, but it was developed that during the interval there had been some correspondence between Mr. Darter and Mr. Alexander. This was not introduced in evidence, but it was shown that it had relation to a statement allegedly taken from Mrs. Darter while she was in the hospital, which is likewise not a part of the evidence. The only evidence concerning excessive water temperature previously was the statement of Mr. Alexander that he sometimes found the water too warm in the mornings, but no time of such an occurrence was given and, as stated, Mr. Alexander was manager for some thirty years. Whether the warmth to which he referred related to comfort of the user or to the fuel bill was not explained.

It is also shown that regular boiler inspections were made. Apparently this was for insurance purposes.

Some reference has been made to the fact that the defendant had no notice of Mrs. Darter's condition. Under the circumstances here shown, this appears of no importance. She is an experienced traveler, accompanied by her husband, to whom her condition was fully known. It is difficult to suggest any special conduct called for on the part of the defendant if chargeable with knowledge.

To hold the defendant responsible for this unfortunate occurrence would be to hold it an insurer. Under the South Carolina law the defendant was not an insurer.

In view of the conclusions stated, it is not necessary to pass upon the defense

of contributory negligence on the part of Mrs. Darter. However, all the evidence is before the court and it would seem not improper that consideration be given this phase of the case.

The facts here are substantially different from what would be the situation if the water had come from the pipes by reason of a defective faucet or shower head, without any action on the part of the plaintiff, as the jury seems to have found in Young v. Knickerbocker Hotel Co., supra, and Lokitis v. Hartzog, supra. Here the plaintiff, an experienced traveler who had been the guest of a large number of hotels, deliberately entered and assumed a seated position in the tub without making any attempt to determine the temperature of the water. Under any circumstances this would be a hazardous act, which hazard was increased by the plaintiff's knowledge that her arthritic condition impaired her activity. It is contended that due to this condition she was fearful of slipping if she entered the tub after the water had been drawn. The dangers of a bath tub are well known. Confronted with this situation and suffering a disability peculiarly within her knowledge, it is my conclusion that the plaintiff was guilty of negligence, which negligence was the cause of her injuries. As previously pointed out, Mr. Darter had set the temperature on two occasions when the bath was used, and no reason is suggested that he might not have done the same thing on this occasion except for the fact that he was asleep at the time. If it should be assumed that the hotel was negligent in any particular, which I do not find, the plaintiff is precluded from recovering by reason of her act.

This leaves only the question of the right of Mr. Darter to recover on his claim.

Counsel for the plaintiffs concede that negligence on the part of Mrs. Darter would constitute a bar to recovery by her husband. This consession seems so amply supported by the laws of South Carolina that a discussion is not called for. Consequently no further discussion of this point is necessary.

This opinion is intended to serve as Findings of Fact and Conclusions of Law.

An order will be entered upon presentation dismissing the complaint at the cost of the plaintiffs.