Bertha Preston DARTER and O. L.
Darter, Appellants,

v.

GREENVILLE COMMUNITY HOTEL
CORPORATION, Appellee.

No. 8432.

United States Court of Appeals
Fourth Circuit.

Argued Jan. 5, 1962.

Decided March 20, 1962.

Alfred F. Burgess, Greenville, S. C. (Donald T. Stant, Stant & Roberts, Bristol, Va., and Wyche, Burgess & Wyche, Greenville, S. C., on brief), for appellants.

Robert F. Plaxco, Jr., and W. H. Arnold, Greenville, S. C. (Love, Thornton & Arnold, Greenville, S. C., on brief), for appellee.

Before SOBELOFF, Chief Judge, and HAYNSWORTH and BOREMAN, Circuit Judges.

BOREMAN, Circuit Judge.

Bertha Preston Darter and O. L. Darter, husband and wife and residents of Tennessee, brought this action for damages for personal injuries sustained by Mrs. Darter. The defendant corporation was the owner and operator of the Poinsett Hotel in Greenville, South Carolina. Mr. Darter was engaged in business activities which required that he travel extensively throughout parts of the United States and Canada. Mrs. Darter usually accompanied him and they stayed at many different hotels.

In the course of Mr. Darter's business activities he and his wife were in Greenville on November 12, 1958, and registered as guests of the Poinsett Hotel. They were assigned to room No. 328 on the third floor and the bathroom connected therewith was equipped with a combination tub and shower bath and a wash basin. Mrs. Darter was then 65 years of age and had been afflicted with arthritis for a number of years. The year before the occurrences here recited she had an acute attack of arthritis in one knee.

On the evening of their arrival each took a shower bath and Mrs. Darter's bath was regulated by her husband by mixing both hot and cold water at a suitable temperature for her to enter. On the following evening this procedure was repeated. During the interval both plaintiffs had drawn water in the wash basin without incident and without noticing any unusual condition.

In the early morning hours of November 14, between two thirty and three o'clock, while Mr. Darter was asleep, Mrs. Darter was suffering pain from her arthritic condition and decided to take a hot tub bath to obtain relief. She closed herself in the bathroom and, after removing her clothing, seated herself in the tub. She noticed that the drain was at the opposite end of the tub from the faucets. In her sitting position she faced the faucets and turned on the hot water without having previously tested or determined the temperature. According to her testimony, hot water accompanied by vapor or steam immediately came from the faucet. With the water still running she pushed herself back in the tub and attempted to get out but slipped and fell to a prone position on her back in the tub. Her screams aroused her husband who started in the darkness toward the bathroom but he fell over a luggage rack and was delayed. When he reached the

bathroom he turned off the hot water (there was no cold water running) and assisted his wife from the tub. She was severely scalded and burned over about twenty per cent of her body. Her injuries were serious and she was hospitalized under medical care for a long period of time. She brought this action to recover damages for her personal injuries and Mr. Darter joined as plaintiff to recover for medical and hospital bills and loss of consortium.

The Poinsett Hotel is equipped with two hot water tanks located in the basement and used alternately. No record is kept to show when use is shifted from one tank to the other and there is no evidence as to which tank was in use at the time of the accident. The water in each tank is heated by steam contained in and passed through coils, the steam being generated in a boiler. Steam lines from the boiler to each tank are fitted with valves to reduce the steam pressure to five to fifteen pounds. The steam then passes through a regulator valve for each tank, and each valve is activated and controlled by a thermostat located within the hot water tank. When the water is below a certain temperature, the regulator valve opens to allow steam to pass through the heating coils, and when the water reaches the desired temperature the valve closes to shut off the supply of steam. From circulating pumps in the basement, the water is carried from the tanks to the top of the hotel and then comes back down through lines supplying the rooms. It was explained that in this manner hot water was provided much more quickly than in a private home not equipped with a circulating system.

The case was tried before the court sitting without a jury. Plaintiffs contend that one "thermostat control valve" was defective, the defendant had notice of such defect, the hotel was negligent under the laws of South Carolina in maintaining water in the pipes heated to such a temperature that it would scald and burn and that Mrs. Darter's injuries resulted from such negligence. The District Court found that the hotel was not negligent and that Mrs. Darter was guilty of contributory negligence. The complaint was dismissed and judgment was entered for the defendant. This appeal followed. The plaintiffs here urge that the findings of the trial court were incomplete, that the findings which were made were contrary to the uncontradicted evidence and testimony and that this court is not bound thereby. Upon the whole record we find support for the order of dismissal and judgment for the defendant.

■ It is unnecessary to engage in an extended discussion of the established rule that the findings of fact of the District Court may not be set aside unless clearly erroneous—that is, unless unsupported by substantial evidence, unless against the clear weight of the evidence or unless induced by an erroneous view of the law. Rule 52(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A., in pertinent part provides: "Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses." The plaintiffs urge that findings based upon uncontradicted testimony, where credibility of witnesses is not seriously questioned or involved, are not within the contemplation of the rule, and that this principle is applicable here.

In Jersey Ins. Co. of New York v. Heffron, 242 F.2d 136 (4th Cir. 1957), the appeal was from a finding that a house collapse was an explosion within the coverage of a fire insurance policy. Judge Sobeloff, speaking for this court, at page 139, said:

> " * * * While the Court of Appeals has broader powers in reviewing a District Judge's findings of fact than in reviewing the findings of a jury, * * * it will not disturb his findings merely because it may doubt their correctness. It is required that the Court of Appeals be satisfied that the District Judge is clearly in error before it will set his findings aside. * * * "

The same rule has also been applied to inferences to be drawn from proven facts. In Thompson v. United States, 268 F.2d 426 (4th Cir. 1959), this court stated:

"* * * The sole question is whether the facts require an inference that the United States waived the defaults of its contractor with respect to the contract * * *. That may have been a permissible inference, but the facts as found and recited in the opinion of the District Court do not require it. The factual question was settled by the findings of the District Court which we must accept."

The transcript of the testimony covers nearly three hundred pages. We shall advert to pertinent portions of the evidence in our discussion of certain findings and conclusions of the trial judge which are principally the subject of the plaintiffs' challenge.

Mr. Alexander, who was called as a witness, had been the manager of the Poinsett Hotel for thirty years. He was quite candid in testifying that on occasions in the mornings when he was shaving he found the water hotter than desirable or "too hot"—sometimes as high as 170° F.; that from time to time during his tenure adjustments and repairs were required to remedy fluctuations in the water temperature. The trial judge stated that there was no indication as to the times of these occurrences. It was shown that the thermostat control was set at 150° F. There was no testimony to even remotely relate any of these fluctuations or necessary adjustments to the accident of November 14. No evidence, other than the fact that Mrs. Darter found the water extremely hot at three o'clock in the morning, was presented to show that the system was not functioning properly at the time of the accident or that it previously had been defective *and not repaired*. Uncontradicted was the only evidence on that point which was to the effect that whenever any malfunction or fluctuation in temperature had occurred, adjustments and repairs were promptly made.

Two permanent guests of the hotel testified that they had not found the water too hot on any occasions. Three other temporary guests who were at the hotel at the time of the accident noticed nothing wrong with the water. Plaintiffs argue that no weight should be accorded their testimony because they admitted they had never occupied rooms on the third floor and had not bathed in the hotel at any time close to three o'clock in the morning. But the weight to be given to their testimony and the credibility of these witnesses were matters for the determination of the trial judge.

Next, plaintiffs argue that the fact that a regulator valve on one of the hot water tanks was replaced two and one-half months after the accident establishes a defective condition in the water system at the time of the accident. Witness Miller, who is engaged in the installation of plumbing and heating systems and who assisted in installing the plumbing in the hotel, was called by the management on January 30, 1959, to check the hot water control. While inspecting the smaller tank he observed that the temperature gauge was set at 150° F. but found that the valve (then about fifteen years old) was not operating properly to control the steam. It was necessary to remove the valve which, as stated by the court, "was not properly seated," and to replace the temperature gauge which was found to be rusted. He testified that the average temperature of hot water in homes is 150° F., boiling temperature is 212° and to produce steaming water the temperature must be between 180° and 190°. Mr. Miller did not take the valve apart to examine it but he said he could see that the brass "seat" of the valve was "worn." He could not state with any degree of certainty how long this condition had existed. It was a matter of pure speculation as to whether the condition which was found upon removal of the valve had existed two and one-half months earlier.

From plaintiffs' standpoint, the most favorable synthesis of this testimony would be that there might *possibly* be some connection between the condition of the valve at the time of replacement and the time of the accident. Even so, it would be necessary to assume, without supporting evidence, that the tank fitted with this particular valve was in use at the time of the accident and that there had been a malfunction of the valve for at least two and one-half months prior to replacement despite the testimony that during that time no other guests experienced any difficulty or found the water temperature too high. Analyzing and weighing the testimony as a whole, the trial judge was obviously unwilling to infer or find from the mere replacement of the valve a continuing defective condition for two and one-half months. The argument that the evidence compelled such an inference and finding is most tenuous. It was disclosed by the evidence that regular boiler inspections were made, apparently for insurance purposes. The District Court, in referring to Mr. Miller's call to inspect the water system and his testimony, stated: "He testified that he was told they had been having some trouble with the hot water, and his testimony indicated that the condition might have been brought about by various causes and at an uncertain time. The record is silent as to what prompted this examination of the equipment, but it was developed that during the interval there had been some correspondence between Mr. Darter and Mr. Alexander." The fact that the trial judge drew a *permissible* inference favorable to the defendant does not command reversal.

■ The District Court found that the evidence did not show how far Mrs. Darter turned the "spigot." The correctness of this finding is challenged. Mr. Darter testified that he turned off the hot water and, to the best of his recollection, he turned the "handle" from "a quarter to a half turn" but Mrs. Darter herself offered no testimony as to how far she turned it when turning on the water. Plaintiffs say in their brief that this testimony indicates "that Mrs. Darter had not turned the hot water handle on to an excessive degree." It thus appears that they interpret the judge's finding as referring to the force or volume of the water coming from the faucet rather than to the extent to which she turned the "handle." There was no evidence to show how far this particular faucet was "opened" by a half turn or a quarter turn of the "handle." It is a matter of common knowledge and experience that there is a vast difference in water faucets and the same positioning or turning of the "handles" of two apparently similar faucets does not necessarily produce or release the same volume of water from each faucet. Just what percentage of the maximum flow of water was released from the faucet by Mrs. Darter is not disclosed. However, it must have been evident to the trial court, as it must be to anyone, that when Mrs. Darter turned the "handle" the water flowed from the faucet with force and in considerable volume. But there is no claim here that the faucet was defective in any particular— the allegation of negligence is made with respect to defective equipment on a tank in the hotel basement.

■ Plaintiffs criticize the judge's findings that Mrs. Darter made no attempt to shut off the flow of water. Indeed, it appears to be an uncontradicted fact that Mrs. Darter turned on the hot water and when it was hot sooner than she expected, she pushed herself back in the tub and away from the faucets, intending to get out. She stated that she was unable to escape from the tub—"I fell back. They said I went into shock. I know I was so limp that I couldn't help myself." Thus, the court's finding was clearly correct. However, it is not made to appear that the ultimate decision below in favor of the defendant was based upon or materially influenced by this incidental notation of fact.

■ We are aware that many courts have stated and applied the principles that where the trial court fails to make *requisite* findings of fact, its conclusions

of law cannot be sustained and it is essential that the trial court find the ultimate facts upon which the conclusions of law and the judgment are based. We approve these principles without reservation. Findings of fact and conclusions of law may be incorporated in a trial court's opinion or memorandum of decision,[1] provided, of course, they meet the usual standards of sufficiency.[2] In the instant case, the trial judge prepared and filed a written opinion, reported at 194 F.Supp. 642 (W.D.S.C.1961), stating, "This opinion is intended to serve as Findings of Fact and Conclusions of Law."

■■ Plaintiffs argue that the District Court failed to meet the requirements of F.R.Civ.P. 52(a) because there was no specific finding on a crucial question—whether the hotel had notice, actual or constructive, of a defect in the water heating sytem. In Carr v. Yokohama Specie Bank, Limited, 200 F.2d 251, 255 (9th Cir. 1952), the court, in discussing the requirements of Rule 52, stated:

"The question whether the showing made is clear and convincing is one for the trial court. And the federal rule relating to findings of a trial court does not require the court to make findings on all facts presented or to make detailed evidentiary findings; if the findings are sufficient to support the ultimate conclusion of the court they are sufficient. * * * Nor is it necessary that the trial court make findings asserting the negative of each issue of fact raised. It is sufficient if the special affirmative facts found by the court, construed as a whole, negative each rejected contention. The ultimate test as to the adequacy of findings will always be whether they are sufficiently comprehensive and pertinent to the issues to provide a basis

for decision and whether they are supported by the evidence."

Although a more specific finding of fact upon the question posed by the plaintiffs would have been helpful and appropriate, a failure to make it does not constitute reversible error.[3] As to whether findings of fact are sufficient depends, of course, upon the particular facts of each individual case and no general rule can govern.[4]

In the presentation of this issue, the hotel's notice or knowledge of an alleged defect, the trial judge's attention was directed with particular emphasis to the unreported case of Mary Lokitis v. F. R. Hartzog et al. (Civil No. 6961 E.D. S.C.), wherein the female plaintiff sued the motel operators for damages for serious burns suffered by her when she turned on the shower and a blast of steam and scalding water issued therefrom of sufficient heat and force to cause her to fall in the shower in a position from which she could not extricate herself. Issues of defendants' primary negligence and plaintiff's contributory negligence (failure to test water temperature before entering shower) were submitted to the *jury*. However, there was evidence that *a steam regulator valve on the hot water system had been completely removed, which fact was known to the defendants*. The jury returned a verdict for the plaintiff.

In the case at bar, in order to demonstrate that the trial judge fully considered the questions presented, we think it helpful to quote from his opinion as follows:

"* * * Although the temperature fluctuates at times he [the hotel manager] had never received a complaint of water being too hot during his entire experience. However, he testified that on occasion he has found the water too hot, or hotter than desirable, in the morn-

---

1. Rule 52(a), Federal Rules of Civil Procedure.

2. 5 Moore's Fed.Prac. (2d Ed.) ¶52.06 [3].

3. Weber v. McKee, 215 F.2d 447, 451 (5th Cir. 1954).

4. Ibid.

ings. * * * Three other guests, who were also attending the dairy convention and were at the hotel at the time, noticed nothing wrong with the water. Two permanent guests, who have resided at the hotel for sixteen years, testified that they had never found the water too hot. * * * The only evidence concerning excessive water temperature previously was the statement of Mr. Alexander that he sometimes found the water too warm in the mornings, but no time of such occurrences were indicated and, as stated, Mr. Alexander was manager for some thirty years. Whether the warmth to which he referred related to comfort of the user or to the fuel bill was not explained.

* * * * * *

"Of course, the first question to be resolved is whether actionable negligence on the part of the defendant has been shown. The South Carolina courts do not recognize the doctrine of *res ipsa loquitur,* but from the authorities cited it appears that the rule is that negligence may be proved by circumstantial evidence as well as by direct evidence, and the innkeeper is under the duty to exercise ordinary care to furnish guests safe premises, which in this case includes furnishing hot water at a reasonable temperature. The innkeeper is not an insurer and *he is chargeable only with actual knowledge or with knowledge which by the exercise of reasonable care he should have known.* That is the test to be applied here. (Emphasis supplied.)

* * * * * *

"* * * In the Lokitis case Judge Wyche recognized the law as I have stated it. In charging the jury he stated the rule to be that to recover the plaintiff must prove by the greater weight or preponderance of the evidence that the injuries were caused by one or more acts of negligence alleged in the complaint. He also charged the jury that the innkeeper is not an insurer, but he owes to his guests the duty of exercising ordinary and reasonable care to maintain the premises in a reasonably safe manner. In that case the valve regulating the steam had been removed from the system by the defendant, which fact was, of course, known to the defendant. The instant case is more similar to Sexton v. Noll, 108 S.C. 516, 95 S.E. 129, 131, in which a child was burned by the defective condition of a faucet attached to a tank containing hot asphalt. The court said:

"'The testimony shows that the defective condition of the pipe was the proximate cause of the injury; but it was not an obvious danger nor one reasonably to be anticipated by the defendant.'"

Later, in dealing with the question of Mrs. Darter's contributory negligence, the judge stated:

"If it should be assumed that the hotel was negligent in any particular, *which I do not find,* the plaintiff is precluded from recovering by reason of her act." (Emphasis supplied.)

Upon careful review of the trial judge's written opinion, we experience no difficulty in arriving at the conclusion that he considered and rejected the plaintiffs' contention and found that the hotel had no notice, either actual or constructive, of a dangerous condition or defect in the hotel hot water system. We do not find it necessary to remand the case for a more specific finding on this point.[5]

In Bowling v. Lewis, 261 F. 2d 311, 69 A.L.R.2d 1100 (4th Cir. 1958), this court had occasion to consider and apply the law of South Carolina relating to the duty owed by an innkeeper to his guests; also actionable primary negli-

5. Cf. Knapp v. Imperial Oil & Gas Products Co., 130 F.2d 1 (4th Cir. 1942).

gence and contributory negligence. The court said (261 F.2d 311, 313):

"No South Carolina cases declaring the degree of duty owed by an innkeeper to his guests have been cited to us by counsel, nor do we find any."

On the same page, citing 28 Am.Jur. 578, 579, the court then stated what it found to be the general rule:

" 'The law imposes a duty on an innkeeper or similar proprietor to furnish safe premises to his patrons * * *. Generally, however, his duties and liabilities in this respect are not those of an insurer, and extend only to the exercise of reasonable care; which must be determined from the circumstances. The proprietor's liability in such cases rests upon the same principles applicable in other cases where persons come upon the premises at the invitation of the owner or occupant and are injured in consequence of the dangerous condition of the premises. * * * ' "

In Bowling, 261 F.2d 311, 315, in discussing contributory negligence, the court observed:

" * * * it is well settled that ordinarily the question of contributory negligence is one for the jury. Hamlet v. Troxler, 4 Cir., 235 F.2d 335.

"As was said by the South Carolina court in Gillespie v. Ford, 225 S.C. 104, 81 S.E.2d 44, 47, speaking of contributory negligence:

" 'It rarely becomes a question of law for the court.' "

This court there held, in effect, that there was evidence sufficient to go to the jury on the question of defendant's negligence and also on the question of plaintiff's contributory negligence. We agree that those are questions ordinarily to be answered by the trier of fact and, in the instant case, by the judge sitting without a jury.

Here, it is apparent that the trial judge had the correct view of the applicable law with reference to the hotel's duty to its guests. As he stated: "To hold the defendant responsible for this unfortunate occurrence would be to hold it an insurer. Under the South Carolina law the defendant was not an insurer."

The District Court expressed the opinion that because of its disposition of the plaintiffs' claim that the defendant was guilty of actionable negligence, it was unnecessary to pass upon the defense of contributory negligence. However, the court proceeded to make findings and to state conclusions concerning that defense substantially as follows: The plaintiff, Mrs. Darter, was an experienced traveler who had been the guest of a large number of hotels; her husband had regulated the temperature of the water on two occasions when she used the bath; she deliberately entered and assumed a sitting position in the tub without making any attempt to determine the temperature of the water; under any circumstances this would be a hazardous act; this hazard was increased by her knowledge that her arthritic condition impaired her activity. The court continued: "It is contended that due to this condition she was fearful of slipping if she entered the tub after the water had been drawn. The dangers of a bath tub are well known. Confronted with this situation and suffering a disability peculiarly within her knowledge, it is my conclusion that the plaintiff was guilty of negligence, which negligence was the cause of her injuries."

Plaintiffs argue that several witnesses testified that they invariably turned on the hot water first and then tempered it by adding the cold; that this is such a common practice that the court should take judicial notice of it; that Mrs. Darter carefully entered the tub and then turned on the water assuming that the water would not be heated to a scalding temperature. But other witnesses testified that it was their normal procedure to first regulate the water before enter-

ing the tub.[6] From the evidence before him, the trial judge could reasonably infer that Mrs. Darter knew that, in exercising ordinary care and caution, the hot and cold water should be blended to provide a proper and safe temperature even before entering a shower bath. Her husband had regulated the temperature of the water before she entered the shower on the two evenings following their arrival at the hotel. Furthermore, the judge knew of Mrs. Darter's arthritic condition, that her agility was thus impaired and that she was partially disabled. Naturally, this condition was well known to her. She owed the duty to herself to exercise ordinary and reasonable care whether she was in her own home or in the defendant's hotel. Whether she exercised that degree of care required of her under the circumstances was for the determination of the trial judge.

█ It is well settled that any person suffering from the effects of a physical disability owes to himself a commensurately greater degree of care. The general rule is stated in 38 Am.Jur. 895, Negligence, Section 210:

"* * * The rule that the conduct of the ordinarily prudent person under given conditions established by law is the standard to be applied in determining whether the plaintiff has been guilty of contributory negligence applies to the physically disabled as well as to the physically fit. Reasonable care in the case of a plaintiff who has defective vision is such care as an ordinarily prudent person with a like infirmity would exercise under the same or similar circumstances. *However, the fact that a person is afflicted with a physical disability requires him to put forth a greater effort for his own safety than one not disabled, in order to attain the standard of the ordinarily prudent man which the law has established for everybody."* (Emphasis supplied.)

Our boundless and haunting sympathies for the unfortunate victim of this accident, indescribable as they are, cannot serve as the basis for a determination of the questions here presented. We cannot disturb the findings and conclusions of the trial judge unless we find them to be clearly erroneous. As the court said in June T., Inc. v. King, 290 F.2d 404, 405 (5th Cir. 1961)—"It is another instance in which the real complaint is that the Judge did not decide as he ought, therefore we should."

Affirmed.

---

6. Mr. Darter, himself, in response to a question on cross-examination, testified:

"Q. I want to ask you, Mr. Darter, isn't it a fact that even in your home, you couldn't take a bath, either a shower or a tub bath, without mixing some cold water with the hot, because the hot would burn you? A. Oh, yes, that's right. You adjust the temperature with the cold water."