AMERICAN OIL COMPANY, Libellant-Appellant,

v.

TICE TOWING LINES, INC., TUG DAL-ZELLYNX, her Engines, Tackle, etc., and Dalzell Towing Co., Respondents-Appellees.

No. 217, Docket 27659.

United States Court of Appeals Second Circuit.

Argued Jan. 15, 1963.

Decided Jan. 21, 1963.

William E. Fuller, New York City (Kirlin, Campbell & Keating, New York City, on the brief), for libellant-appellant.

Robert B. Pohl, New York City (Burlingham, Underwood, Barron, Wright & White, New York City, on the brief), for respondents-appellees.

Before MEDINA, WATERMAN and MOORE, Circuit Judges.

MEDINA, Circuit Judge.

Libellant owns a dock and adjoining garage at No. 1117 Grant Street, Brooklyn, New York, at a turn in the English Kills-Newtown Creek, a narrow inland waterway, both of which it claims were damaged when respondent's tugboat, the "Dalzellynx," with an attached barge, "Bouchard No. 40," struck the dock on March 21, 1958 at about 6:30 P.M. Three employees of libellant testified at the trial before Judge Levet that at this date and about this time they were in the garage when they heard a very loud noise and felt a very strong vibration of the building; that they ran out onto the dock and saw respondent's flotilla passing by; and one of these witnesses stated that he saw the barge in contact with the dock. A fourth employee, a supervisor who was located in another building further away from the dock, testified that he was summoned by one of the employees and ran to the dock where he observed the flotilla passing and the name "Bouchard 40" on the barge. Both captains and one deckhand, however, testified that they were on deck performing their normal duties, which includes watching for collisions in this narrow waterway, when the flotilla passed libellant's dock at this time, and that they experienced no contact with any shore structure. Although it was dusk with good visibility, libellant's witnesses also testified that they saw no one on the ships' decks, and respondent's witnesses testified they saw no one on the dock.

The evidence of damage consisted of testimony by libellant's employees and photographs taken on December 5, 1958 and June 8, 1960. The three garage employees testified they made oral reports on March 21, 1958 to the supervisor. Other written reports and memoranda are referred to in the record as being made by libellant's employees and agents in investigating the alleged collision, but written notice of claim was not given to respondent until April 29, 1958, 39 days after the alleged collision. There is no independent evidence of damage to the vessels, and respondent's witnesses denied any damage, although they admitted to a certain amount of normal denting and one might infer from their testimony that a gentle collision with libellant's dock might not have caused noticeable denting.

All of this suggests that Judge Levet as trier of fact had the task of weighing the evidence and of deciding who was telling the truth, and under familiar principles his determination that libellant had "not shown by a fair preponderance of the evidence that the barge *Bouchard 40* struck the pier or that the barge caused the damage claimed" is not "clearly erroneous" and should be affirmed. M. W. Zack Metal Co. v. S.S. Birmingham City, 2 Cir., 1962, 311 F.2d 334.

Libellant contends, however, that irrespective of the conflicting assertions as to collision or no collision made by the employees of the contending parties, the record contains independent circumstantial evidence which proves "to a moral certainty" that respondent's flotilla struck the dock and caused the damage. The evidence relied upon is the log of the Metropolitan Avenue lift bridge which spans the creek approximately 300 feet from the point of alleged collision, the entries of which for March 21, 1958 show that only respondent's flotilla passed under the bridge between the hours of 4 P.M. to 10 P.M. Libellant seizes upon this and reasons as follows: The damage to libellant's property was caused by a vessel; for a vessel to have passed by libellant's dock on the narrow waterway it must have passed under the bridge; but the log shows that only respondent's flotilla passed under the bridge at the time in question; therefore, irrespective of the conflicting direct testimony as to collision or no collision, the only logical conclusion is that respondent's flotilla struck the dock and caused the damage.

As the bridge tender was not called as a witness, it is not strange that the trial judge was principally concerned with the issue of veracity between the witnesses for the contending parties, whose testimony was clearly irreconcilable. We cannot say that proper consideration was not

688

given to the log, despite the fact that the trial judge said nothing about it. Indeed, the natural presumption is that every facet of the case was considered. This is especially true where, after summation by counsel for the respective parties, and at the conclusion of a short and simple case, the trial judge dictated his opinion and findings at once. Polarus S. S. Co. v. The T/S Sandefjord, 2 Cir., 1956, 236 F. 2d 270, 272, cert. denied, Viriks Rederi A/S v. Polarus S. S. Co., 1957, 352 U.S. 982, 77 S.Ct. 383, 1 L.Ed.2d 365; Hecht, Levis & Kahn, Inc. v. The S. S. President Buchanan, 2 Cir., 1956, 236 F.2d 627, 629. Moreover, the findings seem to us to be sufficiently comprehensive. 2B Barron & Holtzoff, Federal Practice and Procedure, Section 1127, page 504 (2d ed. 1961); Carr v. Yokohama Specie Bank, Ltd., of San Francisco, 9 Cir., 1952, 200 F.2d 251, 255; Darter v. Greenville Community Hotel Corp., 4 Cir., 1962, 301 F.2d 70, 75.

Affirmed.