2 F.3d 1149
 26 Fed.R.Serv.3d 598
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Joshua ROMERO, a minor, by his father and next friend;
Clifford A. ROMERO; Roxanna A. Romero,
Plaintiffs-Appellants,
v.
UNITED STATES of America, Defendant-Appellee.
 No. 92-2617.
 United States Court of Appeals,
Fourth Circuit.
 Argued: June 7, 1993.
Decided: August 11, 1993.
 
 Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. Claude M. Hilton, District Judge. (CA-90-867-A)
 Ashley Joel Gardner, Shulman, Rogers, Gandal, Pordy & Ecker, P.A., Rockville, Maryland, for Appellants.
 Patricia Jane Reedy, Civil Division, United States Department of Justice, Washington, D.C., for Appellee.
 Walter A. Oleniewski, Shulman, Rogers, Gandal, Pordy & Ecker, P.A., Rockville, Maryland, for Appellants.
 Stuart E. Shiffer, Acting Assistant Attorney General, Kenneth E. Melson, United States Attorney, Roger D. Einerson, Assistant Director, Torts Branch, Civil Division, United States Department of Justice, Washington, D.C., for Appellee.
 D.S.C.
 AFFIRMED.
 Before ERVIN, Chief Judge, PHILLIPS, Circuit Judge, and G. Ross ANDERSON, Jr., United States District Judge for the District of South Carolina, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 Joshua Romero, an infant suffering from cerebral palsy, and his parents, two active duty members of the Armed Forces, appeal the district court's entry of judgment for the United States government in their medical malpractice action brought under the Federal Tort Claims Act (FTCA). 28 U.S.C. Secs. 1346(b), 2671-2680 (Law. Co-op. 1988 and Supp. 1992). The Romeros brought suit alleging that military physicians at the United States Hospital, Camp Pendleton, California, breached a duty of care during their prenatal treatment of Ms. Romero. Specifically, the Romeros contend that the government failed to take adequate measures to prevent Joshua's premature birth and resulting brain damage. The district court, after hearing testimony in a non-jury trial, found that the Romeros had failed to establish any negligence on the part of the government and alternatively that all of the Romeros' claims were barred by the two year statute of limitations applicable to all medical malpractice actions under the FTCA. We affirm.
 
 FACTS
 
 2
 In December, 1985, Dr. Stephen Richards, a staff obstetrician at the United States Naval Hospital, Camp Pendleton, California, treated Ms. Romero for complaints of severe abdominal pain. Ms. Romero tested positive for pregnancy, but because intrauterine pregnancy was not revealed on ultrasound, laparoscopic surgery was conducted to rule out tubal pregnancy. On December 20, 1985, Ms. Romero was discharged from the hospital with a diagnosis of"presumed intrauterine pregnancy." She was subsequently assigned a due date of August 17, 1986 and provided instructions concerning activity, diet, medications, the necessity of return appointments, and to call her physician if she experienced anything unusual.
 
 
 3
 Between January 14 and May 27 of 1986, Dr. Richards provided prenatal care to Ms. Romero at the hospital's OB-GYN clinic. Dr. Richards, aware that Ms. Romero experienced a prior spontaneous abortion during her second trimester, suspected she was at risk of having an incompetent cervix (a cervix incapable of carrying to term) and as a result placed her on an examination schedule of every two weeks to detect cervical changes. In each of Ms. Romero's prenatal exams occurring from January 14 to May 27, Dr. Richards noted that her cervix remained closed. Ms. Romero states that on May 27, Dr. Richards instructed her that her next examination would be in four weeks.
 
 
 4
 On June 12, 1986, Ms. Romero went to the OB-GYN clinic with complaints of a pushing pressure that began two days prior. It was noted that Ms. Romero was completely effaced and dilated and that Joshua was in breech position with a heart rate of 140-46 beats per minute (a normal fetal heart rate for a 30-31 week gestation fetus is 140-60 beats per minute). Upon examination, Drs. Reiners and Burson concluded that Ms. Romero required delivery by caesarian section. Dr. Burson conducted the procedure and Joshua had a normal cord blood pH of 7.37 at birth. Because Joshua's lungs had not yet sufficiently matured, he developed respiratory distress syndrome immediately after birth. On June 13, the hospital transferred Joshua to the neonatal intensive care unit at Kaiser Permanente Hospital in San Diego, California, a facility more properly equipped to deal with his condition.
 
 
 5
 Joshua was admitted to Kaiser in fair condition. The morning of June 14, however, Joshua developed pulmonary interstitial emphysema (PIE) in his right lung. His blood carbon dioxide levels rose from 41.8 to 95.6 between 9:30 p.m. on June 13 and 5:00 p.m. on June 14, 1986 (normal level is approximately 40-45). At approximately 5:00 p.m., a neonatologist at Kaiser manually ventilated Joshua with an ambu bag at a rate of 150-80 breaths per minute in an attempt to decrease his carbon dioxide level. An hour later, Joshua was placed on a negative pressure ventilator, designed to reduce the amount of pressure required to move air into and out of the lungs. As a result of placement on the ventilator, Joshua's carbon dioxide levels decreased gradually.
 
 
 6
 On June 14 and 16, 1986, head ultrasounds were conducted revealing no hemorrhages. A June 20th head ultrasound, however, indicated that Joshua had suffered a "left parietal intraparenchymal hemorrhage." Ultrasounds conducted on June 24 and 27 demonstrated no change in the size of the hemorrhage. A July 1st ultrasound indicated that the hemorrhage had resolved and Joshua was eventually released on August 1, 1986.
 
 
 7
 After continued care by the military hospital, it was determined that Joshua suffered from cerebral palsy as a result of the brain hemorrhage. The Romeros were notified of this fact on February 12, 1987. On March 3, 1987, Joshua was also diagnosed as having "spastic quad[ripelegia]," an involuntary muscular contraction of all extremities.
 
 
 8
 The Romeros filed administrative claims on April 12, 1989. This action was subsequently initiated on June 22, 1990 seeking recovery for injuries suffered by Joshua and his parents because of Joshua's premature birth. The Romeros contend that the premature birth resulted from inadequate prenatal care rendered by the government.
 
 
 9
 On September 4, 1990, the United States filed a motion to dismiss the Romeros' complaint on the ground that the claims asserted were barred by the Feres doctrine.* The district court subsequently dismissed the Romeros' action holding that their claims were Feres barred and the Romeros appealed. On January 17, 1992, we reversed the district court's ruling and remanded the case for further proceedings. Romero v. United States, 954 F.2d 223 (4th Cir. 1992).
 
 
 10
 In accordance with our ruling, the district court entered an amended order scheduling discovery. Pursuant to this order all discovery was to conclude no later than July 10, 1992. Moreover, the parties were directed to submit a list of all witnesses expected to testify at trial by July 16, 1992. On August 13, 1992, the United States moved for leave of the district court to add three expert witnesses to its witness list. The district court granted the government's motion provided that each of the additional expert witnesses were made available for deposition. The court subsequently denied the Romeros' motion for reconsideration of the ruling.
 
 
 11
 The Romeros deposed the United States' expert witness, Dr. Gluck, on September 1, 1992, twenty-eight days before trial. On September 28, 1992, the Romeros filed a motion in limine to preclude Dr. Gluck from testifying at trial regarding the treatment provided to Joshua by physicians at Kaiser Permanente Hospital. The district court denied this motion finding that the witness had been "properly identified" and the substance of his testimony relevant.
 
 
 12
 On October 15, 1992, the district court entered judgment for the United States in a fourteen page published opinion, which included eighty-nine separate findings of fact and three pages of conclusions of law. Romero v. United States, 806 F. Supp. 569 (E.D. Va. 1992) (Romero II). In summary, the district court held that "[t]he premature birth of Joshua was not caused by any negligent act or omission of the Navy physicians," id. at 580, and in the alternative, the Romeros' claims were barred by the two year statute of limitations applicable to all medical malpractice actions under the FTCA. Id. at 581.
 
 ADMISSION OF EXPERT TESTIMONY
 
 13
 The Romeros argue that the district court abused its discretion by permitting the government to admit the testimony of Dr. Gluck concerning the treatment provided to Joshua by physicians at Kaiser Permanente Hospital. Specifically, the Romeros contend that they were unfairly prejudiced because the government was permitted to add Dr. Gluck to its expert witness list after the court's deadline for such had expired. The Romeros also argue that they were unfairly surprised by Dr. Gluck's testimony concerning Joshua's injuries resulting from the physicians at Kaiser and not as a result of the acts or omission of the government.
 
 
 14
 It is clearly established that we will not set aside a district court's evidentiary or procedural decisions absent a clear indication that the court abused its discretion in making such ruling. Persinger v. Norfolk & Western Ry. Co., 920 F.2d 1185, 1187 (4th Cir. 1990). The question of whether expert testimony is admissible is within the sound discretion of the trial judge, and appellate courts should defer to that trial judge's decision. Id. at 1187 (citing Scott v. Sears, Roebuck & Co., 789 F.2d 1052, 1055 (4th Cir. 1989)).
 
 
 15
 The district court in an order dated August 24, 1992, granted leave for the government to add Dr. Gluck to its witness list. This grant was conditioned upon the government providing the Romeros sufficient opportunity to depose the witness. The district court heard but denied the Romeros' motion for reconsideration.
 
 
 16
 Dr. Gluck was deposed by the Romeros on September 1, 1992, twenty-eight days before trial. During this deposition, Dr. Gluck informed the Romeros that he considered the acts and/or omissions of the Kaiser hospital to be the cause of Joshua's brain hemorrhage and his resulting injuries. We find the Romeros had sufficient time and opportunity to prepare for this testimony, given that Dr. Mehl, the pediatric neurologist who examined Joshua in February of 1987, had indicated in the medical records that Joshua's cerebral palsy resulted from a hemorrhage or bleeding of the brain.
 
 RULE 52(a) FINDINGS BY THE COURT
 
 17
 The Romeros also argue that the district court failed to rule on all material issues of the case in compliance with Rule 52(a) of the Federal Rules of Civil Procedure. Rule 52(a) provides that "[i]n all actions tried upon the facts without a jury, or with an advisory jury, the court shall find the facts specially and state separately its conclusions of law thereon." Fed. R. Civ. P. 52(a). This language has been construed:
 
 
 18
 not to require a court to make findings on all facts presented or to make detailed evidentiary findings; if the findings are sufficient to support the ultimate conclusion of the court they are sufficient.... Nor is it necessary that the trial court make findings asserting the negative of each issue of fact raised. It is sufficient if the special affirmative facts found by the court, construed as a whole, negative each rejected contention. The ultimate test as to the adequacy of the findings will always be whether they are sufficiently comprehensive and pertinent to the issues to provide a basis for decision and whether they are supported by the evidence.
 
 
 19
 Darter v. Greenville Community Hotel Corp., 301 F.2d 70, 75 (4th Cir. 1962) (quoting Carr v. Yokohama Specie Bank, Ltd., 200 F.2d 251, 255 (9th Cir. 1952)). The Romeros specifically contend that the trial court failed to sufficiently rule upon the issue of whether Dr. Richards' failure to maintain a two week examination schedule breached the medical community's standard of care and thereby caused Joshua's premature birth. We do not agree.
 
 
 20
 Though a more specific finding of fact with respect to this issue would have been helpful and appropriate, a failure to make it does not constitute reversible error. See Darter at 75. The district court specifically stated in its fourteen page findings of facts and conclusions of law that "[t]he premature birth of Joshua was not caused by any negligent act or omission of the Navy physicians." Romero II at 580 (emphasis added). This finding when read in conjunction with the remaining portions of the opinion is sufficient to negate the Romeros' contention.
 
 
 21
 The Romeros further argue that the trial court erred in its finding that the government was not negligent and that their claims were barred by the statute of limitations applicable to all medical malpractice claims under the FTCA. Rule 52(a) provides"[f]indings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." Fed. R. Civ. P. 52(a). Thus, unless the court's findings are made " 'in disregard of the applicable principles of law' or through'gross overemphasis on one relevant principle to the exclusion of others,' " the findings are not to be set aside. Famous Knitwear Corp. v. Drug Fair, Inc., 493 F.2d 251, 252 (4th Cir. 1974) (citations omitted).
 
 
 22
 We find that the district court properly considered all applicable laws that relate to negligence and further find that the court did not overemphasize any one point of law to the exclusion of any other. Since we affirm the district court's finding that the government did not engage in any negligent conduct or omissions, it is not necessary to address the Romeros' contention that the court erroneously applied the statute of limitations for medical malpractice actions under the FTCA.
 
 AFFIRMED
 
 
 *
 In Feres v. United States, 350 U.S. 135 (1950), the Supreme Court held that the government is not liable under the FTCA for injuries to service members where the injuries arise out of, or in the course of, activity "incident to service." Id. at 146